# Montgomery County *versus* Schuylkill Bridge Company.

1. Under the Act of May 8th, 1876, (P. L. 131,) and its supplement, a county may take a private bridge for public use and declare it a county bridge free from tolls, but compensation must be first made for the bridge and its attendant franchises.

2. The damages are not to be determined by what the property is worth to the party taking it, but by its value to the company that is deprived of it.

3. A bridge company, whose property was taken under the above Act, had previously purchased a bridge over a canal, which formed a part of the approach to the main bridge, and had also erected a toll house upon a wing of the bridge:

    *Held*, that the jury were properly instructed that if the canal bridge and toll house were purchased and used by the company and were a necessary part of the main bridge, they were proper subjects for consideration in estimating the damages.

4. The rule that inquiry cannot be made into past profits in assessing damages for property taken by right of eminent domain, does not apply when the property taken is a bridge; such property has no general

market value, and the value of its franchises depends upon their pro-
ductiveness at the time of taking, hence evidence is admissible to prove
the receipts for, say the five years preceding the taking.

5. *Semble.* The market value of the stock represents that of the bridge
and its attendant franchises, and would be a fair test of the measure of
damages. Had this test been applied in the present case, the damages
would have probably been larger.

6. In a proceeding under the Act of May 8th, 1876, the county has no
right to complain that the bridge company had declared larger divi-
dends than were authorized by law, particularly as it was a holder of a
large amount of stock, and participated in the profits.

April 29th, 1885.   Before MERCUR, C. J., GORDON, PAX-
SON, STERRETT, GREEN and CLARK, JJ.   TRUNKEY, J., ab-
sent.

ERROR to the Court of Common Pleas of *Bucks county:*
Of January Term 1885, No. 421.

This was a proceeding, instituted under the Act of May
8th, 1876, (P. L. 131,) and its supplement of May 3d, 1878,
(P. L. 41) to declare a bridge acrosss the Schuylkill River at
Norristown, belonging to the Schuylkill Bridge Company, a
county bridge, and to open the same to the public. On March
3d, 1884, a petition was presented to the court of Quarter
Sessions of Montgomery county praying for the appointment
of viewers to assess the damages. On June 5th, 1884, the
report of the viewers was filed awarding to the bridge compa-
ny $50,000; from this award the bridge company appealed,
and the proceedings were certified to the Court of Common
Pleas of Montgomery, and subseqnently a change of venue
was awarded to Bucks county.

On the trial, the following facts appeared: The Schuylkill
Bridge Company was incorporated by an Act of March 11th,
1815, and its supplements for the purpose of erecting a perma-
nent bridge over the river Schuylkill, at or near the borough
of Norristown. By this Act it was provided that when the
bridge was erected "the property shall vest in said company
and their successors;" it also fixed a schedule of tolls for the
bridge. Subsequently the bridge company purchased a lot
near the east end of the bridge and erected thereon a dwell-
ing house for the use and occupancy of the toll gatherer. At
the distance of 155 feet from the west end of the bridge, the
Schuylkill Navigation Company's canal is spanned by a bridge.
The original bridge over the canal was constructed by the
canal company, and subsequently under a contract with the
canal company the bridge company agreed "to take it off
the hands of the Schuylkill Navigation Company." The
bridge company afterward widened this canal bridge and re-

built it, using in part the old foundation walls of the canal company's bridge. The bridge company claimed damages also for the toll gatherer's house and this canal bridge.

In order to fix the value of the bridge, the company proposed to show by W. F. Slingluff, their treasurer, "the receipts of the company for, say five years immediately preceding the taking of this bridge by the defendant, down to the time of taking, and the net receipts and dividends declared." Objected to. Objection overruled and evidence admitted. Exception. (First assignment of error.)

The defendant then offered to show by the same witness "the receipts of the plaintiff corporation since its organization; and also the expenditures and dividends, so that the jury might know whether the amounts given in evidence by the plaintiff truly represented the income of the corporation." Objected to. Objection sustained and evidence excluded. Exception. (Fifth assignment of error.)

The defendant further offered to show that the original cost of the bridge was but $29,080; that all subsequent expenditures for repairs, improvements and rebuilding, were drawn from the contingent fund; that the contingent fund was the product of tolls, and the increase of such tolls by investments; that the dividends declared since 1871 were at a rate greater than the company was authorized to make; this for the purpose of showing that the actual income of the company was in excess of what it should have been. Objected to. Objections sustained and offers rejected. Exceptions. (Sixth and sevententh assignments of error.)

The plaintiff submitted, inter alia, the following point:

8. The value of the bridge to the county is not the measure of damages, the sole inquiry being as to the amount of just compensation to which the bridge company is entitled for the taking of the bridge and the deprivation of their franchise or right to take tolls thereon. *Answer.* Affirmed. (Tenth assignment of of error.)

The defendant submitted, inter alia, the following points:

9. In estimating damages for a property taken for a public use, the fact to be ascertained is the value of the property taken at the time of the taking, and to arrive at this value the jury cannot take into consideration the past annual net profits derived from a particular use of such property.

*Answer.* We decline to affirm this point. It is true that the fact to be ascertained is the value of the property of the plaintiffs at the time of taking, but applying the point to this case the jury, in finding the damages, may consider the past annual net profit derived from the use of the property under the authority of its charter. The use for which the bridge

was and only could be taken under the law is the same use to which it was devoted by the company, and the only one for which it would be of any considerable value, to wit, public travel. (Sixteenth assignment of error.)

11. The measure of damages is the cost of the construction of a new bridge at the time of the taking by the county, similar to the present one, diminished by an amount in proportion to such cost equal to the depreciation of the old bridge from wear and decay.

*Answer.* Assuming that this point is intended to assert the only measure of damages, we decline to affirm it.

The court charged the jury generally as follows:

"If you find that the canal bridge and dwelling house are, or either of them, is a part and parcel of the main structure necessary and convenient as an approach in the one instance, and as a protection to the persons in charge of the bridge in the other instance, then under the law they constitute the same structure, and you will assess the damages of all together, as being taken by the county of Montgomery."

Verdict for plaintiff for $111,322.12 and judgment thereon. Defendant took this writ, assigning for error the ruling on the evidence, the answers to the points, and the portion of the charge as above noted.

*H. K. Weand* and *Richard Watson* (*Aaron S. Swartz* with them,) for plaintiff in error.—We submit that the testimony as to the income of the company for the last five years was not admissible as evidence of the value of the property taken for public use. The owner of property taken cannot give evidence of the profits of his business carried on upon it in order to show the market value of the property: Railroad *v.* Galgiani, 49 Cal., 139; Bridge Co. *v.* Dix, 6 Howard, 507; Eddings *v.* Seabrook, 12 Rich, (S. C.,) 504; Goodin *v.* Canal Co., 18 Ohio St., 169; In re Kensington and Oxford Turnpike, 1 Out., 260. As the state conferred the privilege upon the bridge company to take tolls not exceeding ten per cent. on the cost of the bridge, it is not competent now for the bridge company to claim damages for more than that amount, simply because it has illegally taken more than it had a right to take. The canal company could not relieve itself from the obligation to maintain the bridge over the canal by entering into a contract with the bridge company. The county can compel the canal company to keep their bridge in repair without assuming the contract of the bridge company, and it is wrong to make it pay for what is of no use to it. Neither should the county be compelled to take the toll gatherer's

house; the bridge company can either sell or rent it: Central Bridge *v.* Lowell, 15 Gray (Mass.,) 121.

*James Boyd* and *George Ross* (*Charles T. Miller*, *Charles Hunsicker* and *Charles H. Stinson* with them), for defendants in error.—The offer to show that the company had declared larger dividends than they were authorized by law to do was properly rejected, that question was irrelevant and could only be brought up by the state on a writ of quo warranto: Farnham *v.* Canal Co., 11 P. F. S., 271; Freeland *v.* Ins. Co., 13 Norris, 513. The bridge over the canal is a necessary part of the main bridge as a convenient and necessary approach to it, and the toll gatherer's house was erected partly on the wing-wall of the bridge; both the canal bridge and the house formed part of the main bridge, and compensation was properly allowed for them. Adequate compensation must be made for both property and franchise of a bridge company taken by eminent domain: Towanda Bridge Case, 10 Norris, 219.

Mr. Justice PAXSON delivered the opinion of the court May 25th, 1885.

There are twenty assignments of error in this case, yet they involve but a simple question, viz: the measure of damages for the taking of the bridge. All the minor questions presented are subsidiary to this one general proposition. In view of this we regard a discussion of the case in detail unnecessary.

No question arises as to the power of the county of Montgomery to take the bridge for public use and to declare it a county bridge free from tolls, under the Act of Assembly of May 8th, 1876, P. L., 131, and the supplement thereto of May 3d, 1878, P. L., 41. Such taking, however, involved the necessity of making compensation to the owners, and it was as to the proper measure of damages that all the difficulty occurred in the court below.

The defendant contended, as appears by their eleventh point, " the measure of damages is the cost of the construction of a new bridge at the time of the taking by the county, similar to the present one, diminished by an amount in proportion to such cost equal to the depreciation of the old bridge from wear and decay."

The learned judge very properly declined to affirm this point. The vice of it consists in the fact that it substituted one of the elements of damages for the measure of damages itself. The bridge structure, the stone, iron and wood, was but a portion of the property owned by the bridge company, and taken by the county. There were the franchises of the

company, including the right to take toll, and these were as effectually taken as was the bridge itself. Hence, to measure the damages by the mere cost of building the bridge would be to deprive the company of any compensation for the destruction of its franchises. The latter can no more be taken without compensation than can its tangible, corporeal property. Their value necessarily depends upon their productiveness. If they yield no money return over expenditures, they would possess little if any present value. If, however, they yield a revenue over and above expenses, they possess a present value, the amount of which depends in a measure upon the excess of revenue. Hence it is manifest, that the income from the bridge was a necessary and proper subject of inquiry before the jury. The court permitted the plaintiff to prove the receipts for, say, five years before the taking, but denied the defendants permission to extend the inquiry back to the time of the organization of the company. We perceive no error in this ruling. It was competent to go into this investigation for a few years immediately preceding the taking, but I am unable to see what light it would have thrown upon the matter to show the receipts forty or fifty years ago, when Norristown and Bridgeport were comparatively small villages. Had the bridge been non-productive at remote periods, it would in no sense affect its value now. Its value at the time of the taking is the rule. Nor is the value of the bridge to the county a material inquiry. The county may have made a mistake; the bridge may not be worth to the county what the jury have fixed as the damages. The county might perhaps have built a new bridge at another street for half the money, but it did not do so ; it elected to take the property of the bridge company, and the inquiry under such circumstances is not what it is worth to the party taking, but its value to the company that is deprived of its property.

In this view we have no doubt the toll-house and canal bridge were proper subjects for the consideration of the jury in estimating the damages. They were built by the company for the convenience and proper use of the bridge and the travelling public who used it. Hence it was not error to instruct the jury that if they found the canal bridge and toll-house as now there are a necessary part and parcel of the main bridge as a convenient and necessary approach to it, the plaintiffs were entitled to be compensated for the taking thereof. The jury allowed damages for both, and could not well have done otherwise.

The principle was invoked by the defendant that the true measure of damages was the market value at the time of the

taking, and that to arrive at this value the jury cannot take into consideration the past annual net profits derived from a particular use of such property.

The principle is well enough, but it has no application to the facts of this case. The property taken was of a peculiar character, and can hardly be said to have a market value. It was a bridge and the corporate franchise of the company owning it. There are no sales of such property by which it can be compared, and a market value, in the fair sense of the term, ascertained. One bridge may be of little value, because unproductive; another, of no greater size and cost, by reason of its location may be extremely valuable. The property and franchises of the bridge company are represented by its stock, and the market value of the stock may be said to represent the market value of the property taken, as nearly as it can be ascertained. If the market value of this company's stock had been the test, the probability is that the defendants would have been more dissatisfied with the verdict than they are at present, and would have been invoking some other rule to relieve them therefrom. As to the particular use of this bridge, it is sufficient to say that the use referred to is the only one of of which the bridge is capable, and if the damages cannot be measured by that use, they can be measured by no other. In this respect it differs from ordinary property taken under the right of eminent domain.

It was not error to exclude the evidence offered to show that the company had declared larger dividends than were authorized by law. That was a matter of which the county had no standing to complain in this proceeding, especially as it was the holder of a considerable amount of the stock, and participated in the dividends.

We find no error in this record.

Judgment affirmed.