# Allentown & Coopersburg Turnpike Co. *v.* The Lehigh Valley Traction Co., Appellant.

174        273
20 SC ²182

*Street Railways—Turnpike Companies—Damages.*

Under the act of May 14, 1889, P. L. 217, a turnpike company whose road has been occupied by the tracks of a street railway is entitled to recover from the street railway company compensation for the use and occupation of its road, and such compensation includes all injury done to the property which is the immediate and direct consequence of the occupation and use. The damage is not measured by the additional cost of maintenance of the roadway only, but by the depreciation in value of the property as a whole resulting from the occupation and use, and caused by the presence of the tracks and cars. If these are such a menace to travel as to cause those who would otherwise have driven on the road to abandon its use in whole or in part, they directly affect its earning capacity, diminish its revenues and depreciate its value as a property, and the turnpike company may be permitted to show the decrease in revenues and depreciation in the market value of its capital stock as evidence of the damage sustained.

In estimating the damages there should be excluded from the computation any loss of revenue from tolls occasioned by the fact that new and improved facilities for travel are furnished and that persons, who would otherwise drive over the turnpike, ride in the cars to and from points on the railway. There should also be excluded as an element of damages

the loss of tolls caused by the diversion of travel from the turnpike by reason of the increased danger on a city street with which it connected and with which it formed a continuous route for travel.

Argued Feb. 5, 1896. Appeal, No. 58, Jan. T., 1896, by defendant, from judgment of C. P. Lehigh Co., June T., 1893, No. 19, on verdict for plaintiff. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Appeal from report of viewers. Before ALBRIGHT, P. J.

At the trial plaintiff asked George Blank, a witness, the following question:

Q. By reason of the manner in which this railroad track is constructed and by reason of the embankments on either side of the railroad track and the embankment on the other side, is it dangerous for parties to travel on the pike approaching the city of Allentown on the south and stopping at that toll gate? This for the purpose of showing that by reason of the construction of the Lehigh Valley Traction Company's Railroad upon the bed of the Allentown & Coopersburg Turnpike at the point in question travel upon the turnpike was rendered dangerous, and a diminution of the income of the turnpike company was thus caused, and to that extent the value of the property of the Allentown & Coopersburg Turnpike Company destroyed as a whole.

Defendant objected to any offer for the purpose of showing the diminution of business by reason of the construction of defendant's tracks upon the turnpike of the plaintiff for the following reasons:

1. The franchise of the plaintiff is not exclusive, but was at the time of its creation subject to the grant of such further franchises as public necessity and convenience require.

2. Such diminution cannot be traced directly to the building of defendant's railroad.

3. Such diminution of business, if any, is consequential, and therefore damnum absque injuria.

4. If plaintiff has any legal authority to recover damages against defendant it cannot recover for any diminution of business, but merely for the actual damages to its roadbed, requiring present and future expenditure of money and labor in order to put it in the condition it would be, had such track not been legally made, maintained and operated.

5. Defendant having laid its tracks in pursuance of express statutory authority, upon the public road used and operated as a turnpike road by the plaintiff, only such damages can be recovered, if any, as will compensate plaintiff for the injury done by their enjoyment and use of the property as burdened by the tracks of defendant.

6. Such evidence is incompetent and irrelevant.

7. They have no statutory right to either collect tolls or collect any damages, this being a public road, plaintiff not having any legal right upon it.

By the Court: The act provides that for the occupation of the turnpike in part by the railway company, the latter shall make compensation. The question is as to the method of proving the plaintiff's damages, if any. It can be said in this case as was said in Montgomery Co. v. Schuylkill Bridge Co., 110 Pa. 54, that the property taken was of a peculiar character, and can hardly be said to have a market value. If the court were to limit the plaintiff to proving the value of the turnpike before and after the taking by the railway, it might be that plaintiff could not present the case it has, because the turnpike is not such property as admits of a market value being shown. Therefore the court is of the opinion that the plaintiff must be permitted to show, as was the Schuylkill Bridge Co., in the case referred to, the income of the turnpike company for a limited and reasonable period before the taking; however, there must be excluded from the diminution of earnings, if there was a diminution, that which is represented by the diversion of traffic from the turnpike to the railway company, for that the plaintiff cannot recover.

As to the question whether this witness may express the opinion that the railway made the use of the turnpike dangerous for horses, the objection is sustained. There is nothing to show that this witness can form a better opinion than the jurors as to that. The facts may be shown and then such deductions made by the jury from them as may be proper.

Defendant excepts to the measure of damages, and a bill is sealed for defendant. [1]

Plaintiff offered to show how the income from tolls received by the corporation plaintiff for some years previous to the building of the railroad by the corporation defendant and since the

building of the railroad by defendant had been reduced, for the purpose of showing the damages sustained by the corporation plaintiff. Same objection by defendant as to previous question.

By the Court: The plaintiff is entitled to compensation that is the equivalent of its loss occasioned by the location and use of defendant's railroad on its turnpike. The question eventually will be what the property of the plaintiff is worth less since the building of the tracks than it was before, but, owing to the peculiar nature of the property affected the court is of the opinion that this evidence must be received; that in the nature of things plaintiff could hardly find any witness who as an expert would be qualified to testify to the market value of turnpikes in general, or of this turnpike in particular, and therefore it is conceived that the evidence now offered is pertinent to the inquiry, and to reject it would be in substance leaving plaintiff without redress even if it was damnified by the building of the railroad. As before remarked, any decrease in the earnings, so far as it appears that the decrease was occasioned by a diversion of travel from the turnpike to the railroad, however, must be excluded, when the jury come to consider the evidence now offered to be given.

Objection overruled and bill sealed for defendant. [2]

Plaintiff offered to show by George Blank and other witnesses what the market price of the stock of the turnpike company was before the occupation of the road, and what it is and was since the occupation of the road by the traction company. Defendant objected.

By the Court: This may be shown, and it will not be conclusive. In considering what may be shown in this regard it must be borne in mind that if the stock depreciated by reason of the road being less valuable because travel was diverted from it to the defendant company, or any means of travel, that will have to be borne in mind by the jury. Objection overruled and bill sealed for defendant. [3]

Defendant offered to prove the cost of repairing the road from time to time at such places as the same is put out of repair by reason of the laying of these tracks, and also all other expenses that the turnpike company may have by reason of these tracks being placed upon the turnpike. This was objected to by plaintiff as incompetent and irrelevant, the objection sustained and bill sealed for defendant. [4]

The court charged in part as follows:

, [Now so far as the travel and the income of the turnpike is affected by the traction company's road on the turnpike it is a proper consideration for damages. But so far as the difficulty and danger outside of the turnpike company's property, to wit, on Lehigh street in Allentown is concerned, that must be thrown out and must not be allowed to weigh with you when you come to ascertain the plaintiff's damages, because this jury and this court cannot try the right of the traction company to occupy Lehigh street in Allentown. The right to do that is vested by law in the governing powers of the city of Allentown, the town council and the mayor, and they have the permission; and so far as the danger and difficulty of travel within the city of Allentown tends to keep people off the turnpike and thus diminish the income of the turnpike company, that must be thrown out because we must take it for granted that the use of Lehigh street in the city of Allentown as it is used now is lawful.] [11]

\*     \*     ·\*     \*     \*     \*     \*     \*

[Now if the plaintiff has sustained damages, about which it seems there is no doubt, what is the amount of those damages? Because whatever damage the turnpike had by the occupation of their road by the traction company, and by the use of it, you are to award to plaintiff; and you must bear in mind you are not only to give the turnpike company such damages as they have sustained by laying down of tracks or use of tracks up to this time, but for all time. The damages you award the turnpike company will be all they will ever receive. If the turnpike exists for one hundred or one thousand years they can never recover damages for what you are considering now. It must be once for all time. And you are to give the turnpike company such damages as will amount to compensation. By compensation is meant the measure of the actual loss—a sum equal to the loss of the turnpike company. And you are to consider it must be in full for the present time and for all time; they can recover only once.] [12]

\*     \*     \*     \*     \*     \*     \*     \*

[The plaintiff contends that people who don't use the turnpike are not deterred by the danger in the city, but by the danger on the turnpike itself—on those five hundred feet or thereabouts. They have shown that the tollhouse used to stand in

the road where the Emaus road leads off; that the traction company built its road over the ground where the tollgate used to stand, and that they had to move the tollhouse to the west side of the turnpike, and that now people coming over the turnpike from the south have to come to the tracks of the traction company, cross the two tracks, go over to the tollhouse side to pay their toll, and that makes it dangerous, and that tends to keep people off of the turnpike.  All these things you will consider when you come to consider to what extent the income has been diminished by the traction company's track on the turnpike, and how much it is diminished by these other things for which the traction company is not answerable, as I have already said.] [13]

[Now if I have the figures correctly the testimony is that the two years before the road was built the income from tolls was $6,326 one year and $6,473 for the other; that would make an average of $6,405 for each of these two years.  That for the two years after the construction the income was $6,031 one year, $5,588 the other year; an average that would make, of $5,809.  And the difference between those two averages would be $596; $600 a year nearly.

Now if the traction company's occupying of the turnpike as they did occasioned that loss, then you will make allowance, if you find that some people didn't travel over the turnpike because they used the electric road, or for any reason didn't travel; if there was a changed condition in the toll and other methods of travel and doing business, that you would strike off. And if it is shown that any people failed to travel and pay toll because of the difficulty on Lehigh street within the city, that you would strike off.  And so you will ascertain how much of this falling off of the income was occasioned by the occupation of the turnpike by the traction company, and exclude those things which I have several times told you you shall exclude, and for which you shall not charge the traction company. Then you shall ascertain how much there was a falling off a year.  And while the question of the amount of damages is altogether for you, and what I am suggesting now is not laying down the law to you, it is simply presenting the matter that I may aid you in taking a correct view, and you need not take my view, because you are judges of this matter and not myself.

Still, if it aids you, you can consider the amount of the falling off of the traffic, owing to the causes I have stated before, that the traction company is responsible for.] [14]

[Then if there was a falling off of a certain amount a year that sum would not represent plaintiff's damages, because you are to compensate the plaintiff's loss for all time. You might view it in this light, in order to compensate the turnpike company $100 a year loss, $1,666 at 6 per cent would represent that $100; and $2,000 at 5 per cent would make $100. And if the loss was $300 a year it would be three times that sum of $1,666 or $2,000. And if the loss was $500 it would be five times that sum. · In other words, and that is the plaintiff's argument, that you shall give them such a sum that the interest or income of it a year would be equal to that which they have lost in tolls. You can view it in that light, but you must bear in mind that the sum you will award to the turnpike company will not be the interest, but it will be the whole sum itself; and that would have to be considered in making the sum less than the sum which would produce the annual interest.] [15]

\*    \*    \*    \*    \*    \*    \*    \*

[Then they argue that there was a fall in the stock of the company, by reason of the building of the traction road. Well,. the stock of the corporation represents the property. The stockholders of the corporation own the property. There are three thousand shares of the par value of $10.00, and there were that number of shares all through this time we are inquiring about. Is it proved that there was a fall in the price of stock? Several witnessess have testified that before the building of the traction road it sold as high as $15.25, one said $15.50 a share, and that since the building of the road it sold for about $12.50. Is that true that there was a fall in the price of the stock? If there was, then you are not to take it for granted that the injury done by the traction company for which it is responsible alone affected that; but you are to consider the argument made on the part of the defendant and the evidence elicited that the fall might have been owing to some other cause, to the dullness of the times, or to the fact that turnpikes are getting out of favor and that people travel by other methods, or that people change their means of travel; some may have died, or not have had horses, and all that. That you will bear in mind.] [16]

Defendant's points, among others were as follows:

2. That the turnpike on which the defendant's tracks are laid was built upon a public road for which the land damages had been adjusted long before the creation of the plaintiff and the building of said turnpike, and therefore the plaintiff cannot recover. Negatived. [5]

3. Property devoted to public use cannot be taken by eminent domain for another public purpose without legislative authority, and the plaintiff not having legislative authority, it cannot recover against the defendant. Negatived. [6]

4. That if the plaintiff has any legal authority to recover damages against the defendant, it cannot recover for any diminution of business, but merely for the actual damage to its roadbed requiring present and future expenditures of money or labor in order to put it in the condition it would have been had such tracks not been laid, maintained and operated thereon. Negatived. Diminution of income may be considered as evidence of the extent of injury as stated in the general charge. [7]

5. The defendant, having laid its tracks in pursuance of express statutory authority upon the public road used and operated as a turnpike road by the plaintiff, only such damages can be recovered, if any, as will compensate the plaintiff for an injury done for the enjoyment of so much of the property as is burdened by the tracks of the defendant. Negatived. The injury to the plaintiff as the owner of the whole turnpike is to be considered, but only the occupation and use of plaintiff's road—only so far as the railway is actually upon the turnpike—is to be considered in ascertaining the extent of plaintiff's damages. Of course the jury will bear in mind that the railway only affects the travel at and over the northern end of the turnpike, and that travel over other parts is not affected. [8]

6. The plaintiff has proved no damages for which it is entitled to recover in this action, and therefore your verdict should be in favor of the defendant. Negatived. [9]

7. Under all the evidence in the case, the verdict must be in favor of the defendant. Negatived. [10]

Verdict and judgment for the plaintiff for $3,800; defendant appealed.

*Errors assigned* were among others, (1–4) rulings on evidence,

quoting the bill of exceptions; (5–16) above instructions, quoting them.

*Morris L. Kauffman*, for appellant.—A turnpike road laid out and constructed under authority of law is a public highway: R. R. Co. v. Com., 104 Pa. 583.

Changing a road from a highway to a turnpike is not additional burden on the public roads and is not such an essential change as to require compensation to adjoining owners: Mills on Eminent Domain, 34; Peirce v. Somersworth, 10 N. H. 369; Murray v. Commissioners of Berkshire, 12 Metc. 455; Com. v. Wilkinson, 16 Pick. 175.

The grant of the franchise of the turnpike is not in its nature exclusive, so as to preclude the state from interfering with it by the creation of a similar franchise tending materially to impair its value: In re Citizens Pass. Ry. Co., 2 Pittsburg Reports, 10; Rafferty v. Ry. Co., 147 Pa. 579; 27 Am. & Eng. Ency. of Law, 325; State v. Maine, 27 Conn. 641; Heath v. Barmore, 50 N. Y. 302; Goff et al. v. Turnpike Road, 128 Pa. 621; Act of May 14, 1889, P. L. 217.

The act has reference to the damages done at the time the tracks were laid, not what might result from the future diminution of the tolls of the plaintiff, nor from the depreciation of its capital stock.

The court below held that the rule laid down in the case of Montgomery County v. Schuylkill Bridge Company, 110 Pa. 54, as to the measure of damages was to govern in the case. But there is no similarity between the two cases.

As the compensation was to be made, by the express terms of the statute, for the "occupation and use" of the turnpike, it follows the only injury before the jury was how much is the "occupation and use:" Troy & Boston R. R. Co. v. Northern Turnpike Co., 16 Barb. 100; Kellinger v. R. R., 50 N. Y. 206.

*John Rupp*, *C. J. Erdman*, *T. F. Diefenderfer* with him, for appellee.—What is the proper measure of the compensation to be made by the defendant to plaintiff? Our answer is: The amount of the damages actually sustained by the plaintiff by reason of the acts of the defendant: Montgomery County v. Schuylkill Bridge Co., 110 Pa. 54.

OPINION BY MR. JUSTICE FELL, March 9, 1896:

By virtue of authority conferred upon it by the seventeenth section of the act of May 14, 1889, the Lehigh Valley Traction Company entered upon and used a part of the road of the Allentown & Coopersburg Turnpike Company by laying a double track and running its cars thereon. This use was subject to the duty to make compensation therefor to the owners of the turnpike in the manner fixed by the fourteenth section of the act. The parties in interest being unable to agree, a jury was appointed to assess the damages. The case came to trial in the common pleas on an appeal from the award of the jury of view, and is here upon exceptions to the rulings of the court in relation to the measure of damages.

The defendant's contention is that it is liable only for the damage caused by the laying of the tracks, and not for the loss of profits resulting from the diminution of tolls, and that the full measure of damage is the additional expense which the plaintiff has incurred or may hereafter incur in keeping its roadway in repair by reason of the tracks being laid upon it. The contention of the plaintiff is that it is entitled to recover compensation for all losses which are the direct and immediate result of the act of the defendant in taking possession of a portion of the road and laying its tracks and running its cars thereon, and that the measure of damages is the difference in value of the property of the turnpike company as a whole before and after the construction of the railway. The learned judge adopted substantially the plaintiff's view, but he carefully excluded from the computation of damages any loss of revenue from tolls occasioned by the fact that new and improved facilities for travel were furnished, and that persons who would otherwise have driven over the turnpike rode in the cars to and from points on the line of the railway. Nor was the jury allowed to consider as an element of damage the loss of tolls caused by the diversion of travel from the turnpike by reason of the increased danger on the city street with which it connected and with which it formed a continuous route for travel. The measure of damages was limited to the direct and immediate consequences of the occupation and use.

The seventeenth section of the act by which the defendant

derives its authority to enter upon the turnpike provides "that before such passenger railway company shall enter upon and use any such turnpike or turnpikes in the laying of tracks and the use of the same it shall make compensation to the owner or owners thereof for such occupation and use of such turnpike or turnpikes in the mode provided by the fourteenth section hereof." The fourteenth section provides that in the event of the parties being unable to agree as to the amount of compensation to be paid, the court of common pleas shall appoint a jury to assess the damages.   The compensation secured by the act is compensation for the occupation and use of the property of the turnpike company by the railway company, and it includes all injury done to the property which is the immediate and direct consequence of the occupation and use.   The damage is not measured by the additional cost of maintenance of the roadway only, but by the depreciation in value of the property as a whole resulting from the occupation and use and caused by the presence of the tracks and cars.   If these were such a menace to travel as to cause those who would otherwise have driven on the road to abandon its use in whole or in part they directly affected its earning capacity, diminished its revenue and depreciated its value as a property.

The plaintiff was permitted to show the decrease in revenues and the depreciation in the market value of its capital stock as evidence of the damage sustained.   The admission of this testimony was in harmony with the rulings in Montgomery County v. Schuylkill Bridge Co., 110 Pa. 54, in which it was said: . "The property taken was of a peculiar character, and can hardly be said to have a market value.   It was a bridge and the corporate franchises of the company owning it.   There are no sales by which it can be compared, and a market value in the fair sense of the term ascertained. . . . The property and the franchises of the bridge company are represented by its stock, and the market value of the stock may be said to represent the market value of the property taken, as nearly as it can be ascertained."   This is as true where there has been a partial taking as where the whole has been taken.   The nature of the property made it difficult to apply the rule for the assessment of damages, and especially difficult as a part of the loss of income

was doubtless due to competition, and a part to the increased danger to travel within the city limits, but the rights of the parties were fully explained and guarded in the very clear and able charge of the learned judge before whom the case was tried.

The judgment is affirmed.