## West Chester & Wilmington Plank Road Company, Appellant, *v.* The County of Chester.

[Marked to be reported.]

*Turnpike companies—Eminent domain—Condemnation of road—Evidence—Damages—Cost of road.*

Where a turnpike road is taken by a county, the measure of damages is the value of the property to the owners, not to the county taking it, and such value is to be ascertained, not merely by the value of the structure, but also by the value of its franchises; and the value of its franchises depends largely upon its earning capacity.

In a proceeding to ascertain the value of a turnpike road taken by a county, evidence is admissible of the physical condition of the road at the time it was taken, yet the damages will be the value of the entire property, including the franchise.

In ascertaining the value of a turnpike road taken by a county, if there is any evidence of the original cost of the road, such evidence may be considered by the jury, but it is not controlling upon them.

*Turnpike companies—Ascertaining value of turnpike—Evidence—Returns to state authorities.*

In a proceeding to ascertain the value of a turnpike road taken by a county, returns made by the officers of the company to the state authori-

ties are competent evidence on the part of the county, as to the value of the turnpike company's capital stock, and any one or more of such returns may be offered in evidence without offering the others.

*Turnpike roads—Damages—Evidence—Time for completion of road— Value of franchise.*

In determining the value of a turnpike road condemned by a county, it is proper to admit in evidence the fact that unless the road be completed by a certain date the franchise will be subject to forfeiture under the law.

Argued March 1, 1897. Appeal, No. 502, Jan. T., 1896, by plaintiff, from judgment of C. P. Berks Co., Oct. T., 1895, No. 101, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and FELL, JJ. Affirmed.

Proceeding to assess damages for the making of a turnpike road free from tolls. Before ERMENTROUT, P. J.

At the trial Walter McDonald, a witness for defendant, was asked this question: " Q. That being, then, all the physical property of the company, what, in your judgment, was it worth immediately prior to the date of condemnation."

Plaintiff objected to any testimony showing the value of what the defendant calls the physical turnpike, as separate and distinct from the franchise and right to take toll; and further that the testimony is generally irrelevant and incompetent.

By the Court: We will admit the offer. Exception for plaintiff.

" A. About $3,400."

On cross-examination he testified: " Q. In the estimate that you put on what was called the physical structure, did you take into account the land on which the turnpike was located ? A. No, sir. Q. So you took into account only the material used in macadamizing the surface of the road ? A. And the buildings and gates. Q. That is all? A. Yes, sir; all there is there." [1]

Plaintiff moved to strike out the foregoing estimate of Walter McDonald, as not having been framed upon a proper basis, he not having taken into account an important element, without which such estimate could not be made. The witness having undertaken to value what has been designated the physical structure of the plaintiff's turnpike, and having admitted, upon cross-examination, that in making his estimate he omitted al-

together the plaintiff's interest in the land on which the turn-pike was located, and without which the surface of it would have been of no use whatever, this motion was overruled and the testimony allowed to stand.   Exception for plaintiff. [2]

Defendant offered in evidence certified copies of the returns of the turnpike company for 1888, 1889, and 1893, to the state, for the purpose of taxation, setting forth the value of its stock in those years and its financial status at those times.

Plaintiff objected to the returns for the following reasons: The returns for 1888 and 1889 indicating an opinion of the officer making them as to the actual value of stock in those years, is too remote to the question here trying, as to what the value of the stock was in 1894.   The entire three returns are objected to because it is an offer to show them without showing intervening returns between 1889 and 1893, and defendant should be obliged to put in evidence all the returns, either all returns during a period of ten years, or at least all the returns from the date of the earliest one offered to the date of the last. If defendant will offer in evidence all the returns from 1888 to 1893, inclusive, plaintiffs will withdraw all objections.

By the Court: Admitted.   Exception for plaintiff. [6]

The court charged in part as follows:

[The property was a turnpike road and the appurtenances and franchises—two and one half miles of pike already con-structed and toll producing—with the obligation to prosecute to completion two and one half miles more and make it toll producing.   If not prosecuted to completion before March 16, 1899, its franchises were subject to forfeiture under the law.]

Such being the property, what, then, is the measure of dam-ages for the taking of this property?   The law contemplates compensation—full and fair value—no more, no less—for what was actually taken from the plaintiff.   The measure of damages is the value of the property at the time of taking, to the owners, not only by the mere value of the road itself, the mere structure or physical turnpike, its tollhouses and gates, but plaintiff's entire property rights, with the value of its franchise in connec-tion with those property rights, under and by virtue of which they are used and enjoyed.   The jury will readily understand that the mere possession of a roadbed without the privilege of exacting toll would be of but little account.

Various elements enter into the determination of this question. The value of the company's franchises, its rights and privileges, depends largely upon its earning capacity. The value of its road, its tollhouses and gates, the amount of net tolls, the market value of its capital stock, are all elements to be considered in ascertaining the money value of the turnpike and its corporate franchises. To help you to ascertain this value, and, as bearing upon this question, testimony was submitted to you for the purpose of showing the length of the turnpike, its construction, the kind of material used, its state of repair, earning power year by year, and the market value of the stock. You have heard the witnesses describe its condition. It is hardly necessary for me to say that a turnpike with ruts and hollows, out of order and repair, is not as valuable as a road in good order and repair. Therefore, amongst other things, you will ascertain what kind of a turnpike road was taken by the county. A road without any or little travel is not as valuable, in point of tolls, as one well traveled. The earning capacity is, therefore, material, for if no money return over and above expenses is yielded, the money value of the road, stock and franchises would naturally be affected.

In passing upon the value of the turnpike road, tollhouses, tollgates, the property of the plaintiff, you are not to be controlled by the cost of the original construction. It is not a question of original cost, but of value at the time of taking. For illustration, a farm costing $10,000 ten years ago may have decreased to half that figure at the present time. Land costing $5,000 then, may have risen in value to double that. In either event, if a farm or land were taken under the right of eminent domain, the value would be ascertained, not by its cost ten years ago, but by its market value at the time it was taken. A fairly and reasonably constructed turnpike twenty years ago may have fairly and reasonably cost $5,000 per mile. A fairly and reasonably constructed turnpike in 1894, as stated by one witness in the case—if his testimony is credible and trustworthy—might possibly be made for from $1,500 to $2,000 per mile. The cost of labor, cost of material, cost of construction may vary. But you, as jurors, are required to consider this property just as it lay there, in the condition in which it was when it was taken, and its value then and there, with its accompanying fran-

chises, under the conditions existing at and immediately prior to the time of its being taken.

Good business and earning capacity, with a road in good condition, expenses moderate, dividends large, would be elements tending naturally to increase the value of the stock, road and franchises, whilst opposite conditions, a poor road, poor income, meager travel, would naturally tend the other way, and depreciate the value of the stock, road and franchises. The values that will control you, whether of property, stock or franchises, must, therefore, be of the time of taking; then and then only. What was the property value at and immediately prior to the time of taking? As bearing upon that question, various witnesses were called as to the condition of the road, the value of the stock held, the franchises and property of the plaintiff, together with returns made by the plaintiff to the department at Harrisburg. All this testimony was presented to you to give you data and means of ascertaining what is the proper and just compensation to be paid plaintiff for the taking of this road. Where witnesses contradict each other, it is the duty of the jury to reconcile their testimony, if they can. If not, then it is their duty to make up their minds fairly and honestly which testimony they will believe, and act accordingly. This is a case in which the judgment of the jury must be given upon the evidence fairly and without prejudice. The law makes no intendment against the county of Chester or against the plaintiff. They stand here, both entitled to the protection of the law, and all that either of them can ask is that you fairly hear the testimony, fairly judge it and give such a verdict as the honest consciences of the jury can approve.

In conclusion, let me say, the issue is the value of the property rights and franchises as they existed at and immediately prior to the time of taking. [The nature and character of the road; its two and one half miles completed; its rights and franchises before completing another two and one half miles with its appurtenances, and its toll producing character; the question that if they did not complete it within five years, their rights would be forfeited—all this will be taken into consideration, and then you will ascertain the market value of plaintiff's property and rights as of the date of the taking.] [9]

Plaintiff's points and answers thereto among others were as follows:

5. As the estimate which Walter A. McDonald, one of the defendant's witnesses, undertook to place on the material structure of the plaintiff, omitted altogether the plaintiff's interest in the land on which the turnpike was located and without which it could not exist, such estimate must be entirely disregarded by the jury. *Answer:* Refused. [3]

6. While the jury are to consider the reports of value of stock made by the plaintiff's officer to the auditor general for the years 1888, 1889, and 1893, they should also consider the fact that the defendant has omitted to put in evidence the reports for the remainder of the ten years over which the inquiry in this case has extended. The county of Chester might, if the remaining eight annual reports of the plaintiff were favorable to the county, have put them in evidence as well as those for 1888, 1889 and 1893, while such reports could not have been put in evidence by the plaintiff. *Answer:* Refused. [7]

Defendant's point and answer thereto among others were as follows:

3. The evidence in the case does not show what the property possessed by the plaintiff at the time of the condemnation cost it, and the jury have nothing to do with the question as to how much it cost; the question for the jury is the actual value of the plaintiff's holdings at the date of condemnation; the verdict must be limited to this actual value as of the date of condemnation in April, 1894. *Answer:* This point I affirm and so instruct you. [4, 5]

Verdict and judgment for plaintiff for $5,853. Plaintiff appealed.

*Errors assigned* were (1, 2, 6) rulings on evidence, quoting the bill of exceptions; (3–5, 7–9) above instructions, quoting them.

*Cyrus G. Derr,* with him *Robert S. Waddell* and *J. Frank E. Hause,* for appellant.—In estimating the value of a property it must be taken as a whole, which means that it is not permissible to resolve the property into its component parts and value the parts separately: Finn v. The Providence Gas & Water Co.,

99 Pa. 640 ; Reading & Pottsville R. R. v. Balthaser, 119 Pa. 482.

While in the case of ordinary property which is bought and sold in the market, evidence of cost may be admissible, the rule is of necessity different with respect to properties which, like that of the plaintiff, are made up by a consolidation of franchises and rights of way and physical structures which, as they rarely come into the market, cannot be said to have a market value. Such properties must be valued by a different method, and the cost of producing them throws some light upon the question of value, is admissible in evidence, and a subject proper for the consideration of a jury : Mifflin Bridge Co. v. Juniata County, 144 Pa. 375 ; Montgomery County v. Bridge Co., 110 Pa. 58. ⍟

When corporate property, consisting of a franchise with a right to take toll, an easement and a material structure, is to be valued upon an appropriation by it under the right of eminent domain, the valuations of capital stock contained in the annual reports of the corporation to the auditor general are not admissible in evidence; and where, by the common consent of the court, the plaintiff and the defendant, the inquiry as to the market value of the shares of stock, earning capacity, etc., is made to extend over the period of ten years before the appropriation of the property, and it is proposed on behalf of the defendant to use in evidence the appraisements so contained in the reports of the corporation to the commonwealth, it is not allowable that the defendant select and put in evidence only such of said reports as are unfavorable to the plaintiff, if the plaintiff object thereto and suppress the remainder of them, so that, because the plaintiff cannot offer them, the jury see but part, and that the worst part for plaintiff. If such reports be admissible, they are so only upon the offer of the defendant, and the plaintiff has a right to object to the introduction of less than all of them, as it is incompetent for him to introduce those which the defendant suppressed.

The principle that evidence consists as well of what a party might and does not show, as of what he actually shows, is well established and clearly recognized : Frick v. Barbour, 64 Pa. 120 ; Fowler v. Sergeant, 1 Grant's Cases, 355 ; Blatch v. Archer, Cowper, 63.

When the property to be valued is a corporate one, consisting of a turnpike road with its appurtenances, and there is a compact between the company and the commonwealth that the company shall, within five years, extend its road two and one half miles, such obligation to extend cannot be taken into account, because as it cannot be determined with any degree of certainty as to whether the additional road will be profitable, any conclusion concerning it would be merely speculative and conjectural.

*C. H. Ruhl*, of *Ermentrout & Ruhl*, with him *William Butler, Jr.*, and *John J. Gheen*, for appellant.—Where the market value of the property taken can be ascertained, that is the sole measure of damages without regard to income derived therefrom by the owner, his state of business, or any other consideration whatever: R. R. v. Hill, 56 Pa. 464; Montgomery Co. v. Bridge Co., 110 Pa. 54; Turnpike Co. v. Clarion Co., 172 Pa. 243; Turnpike Co. v. Traction Co., 174 Pa. 273; Reading & Pottsville R. R. v. Balthaser, 119 Pa. 482.

The courts have uniformly held that evidence of value of property must be confined and limited to about the time of the taking or appropriation of the property, with a reasonable latitude before and after taking: Miller v. Windsor Co., 148 Pa. 429; Montgomery Co. v. Bridge Co., 110 Pa. 54.

Each of the returns offered in evidence by the defendant is separate from and independent of all others and is distinct and complete in itself considered, and is presumably based upon the facts and circumstances existing when made by the officials: 1 Greenleaf on Evidence, sec. 201; Wolf Creek Co. v. Schultz, 71 Pa. 180.

Opinion by Mr. Justice Green, July 15, 1897:

The learned court below very carefully and correctly charged the jury in the following words: " The measure of damages is the value of the property at the time of taking, to the owners, not only by the mere value of the road itself, the mere structure or physical turnpike, its tollhouses and gates, but plaintiff's entire property rights with the value of its franchise in connection with those property rights, under and by virtue of which they are used and enjoyed. The jury will readily understand

that the mere possession of a roadbed without the privileges of exacting toll would be of but little account. Various elements enter into the determination of this question. The value of the company's franchises, its rights and privileges, depends largely upon its earning capacity. The value of its roads, its toll-houses and gates, the amount of net tolls, the market value of its capital stock, are all elements to be considered in ascertaining the money value of the turnpike and its corporate franchise. . . . But you as jurors are required to consider this property just as it lay there, in the condition in which it was when it was taken, and its value then and there, with its accompanying franchises, under the conditions existing at and immediately prior to the time of its being taken." There was much more to the same effect in the general charge, and in the answers to points, and it is beyond all question that in all that was said by the court on the measure of damages there was absolute correctness and no error whatever. Thus in Montgomery Co. v. Bridge Co., 110 Pa. 54, we said: "The bridge structure, the stone, iron and wood, was but a portion of the property owned by the bridge company and taken by the county. There were the franchises of the company, including the right to take toll, and these were as effectually taken as was the bridge itself. Hence to measure the damages by the mere cost of building the bridge would be to deprive the company of any compensation for the destruction of its franchises. The latter can no more be taken without compensation than can its tangible corporeal property. Their value necessarily depends upon their productiveness." In Mifflin Bridge Co. v. Juniata County, 144 Pa. 365, PAXSON, C. J., said: "It was held in Montgomery Co. v. Bridge Co., 110 Pa. 54, that where a bridge is taken by a county for public use under the Act of May 8, 1876, P. L. 131, the measure of damages is the value of the property to the owners, not to the county taking it, and that such value is to be ascertained, not only by the cost of the structure, but also by the value of its franchises. The value of its franchises depends largely upon its earning capacity."

This was repeated in a turnpike case, viz, Turnpike Co. v. Clarion County, 172 Pa. 243, together with the following citation from the charge of the court below, viz, "That the true measure of damages is just compensation for the loss suffered

by plaintiff in consequence of the taking by defendant of plaintiff's property, being the substructure, superstructure and approaches of the bridge together with the franchise or right to take tolls, and the jury have no right to take less." To which our Brother DEAN, delivering the opinion of this court, said, "There could have been no more correct statement of the law."

The learned court below followed these cases in the charge and answers, and yet the principal complaint in a number of the assignments of error is that the franchise was ignored, and that only the materials that composed the road were considered, both in the testimony and charge. We do not so understand the rulings, either on offers of testimony, or in answers to points.

As to the evidence received under the first assignment, it was offered and received manifestly for the purpose of showing the condition of the road at the time the turnpike was taken. Most assuredly this was entirely competent. Undoubtedly it was proper for the defendant or the plaintiff to show precisely what was the condition, in a physical sense, of the property to be taken. If this turnpike was out of repair, having but a thin and irregular supply of hard material on its surface, if it had ruts and inequalities through the whole, or a portion of its length, would not the property be worth less as a whole, and in connection with the franchise, on that account? It would be a strange proposition, and one which we cannot possibly sanction, that such evidence cannot be given, because the property must be valued as a whole, including the franchise, and that no other testimony can be received except such valuation in the aggregate. The value of such a property as a whole depends largely upon its physical condition for the purposes for which it is intended, and proof of the condition, therefore, is proof as to value. In no event can it be said that such testimony is irrelevant or incompetent. In Mifflin Bridge Company v. Juniata County, supra, the court below said to the jury, "I therefore charge you that in estimating the damages you are to take into consideration the value of the physical structure at the time of the taking; and this value must be arrived at by taking into consideration the length and width of the structure and number of piers, the value of the masonry, the value of the fill and abutments, as well as the superstructure, and to that you add the value of the franchises." We said upon this subject,

" The witness, L. G. Brown, was asked as to the value of the bridge, by which I understand to be meant the superstructure only. This was objected to on the ground that Brown, having contracted for the erection of the bridge, should have been asked as to the contract price. We do not think this objection well taken. The true question was the value of the bridge, not what it cost. The contractor may have taken it at too low a figure or the owner may have paid too much. The county is entitled to pay for it at its actual value at the time of the taking."

These considerations dispose of the first three assignments of error.

The fourth and fifth assignments cannot be sustained. The court did not state to the jury that the evidence did not show what the property cost. The affirmance of the third point of the defendant was correct. There was no evidence of the actual cost of the property. Not one of the witnesses whose testimony is referred to in support of these assignments gave any testimony whatever as to the actual cost of the property. They were not examined upon that subject. They were called and testified as to the value of the shares of capital stock. They argued that because the dividends were five and one half per cent on the capital stock of $14,250 the shares were worth par, and that is the whole effect of their testimony. Not one of them testified that the property of the plaintiff had cost $14,250. While if there had been evidence of the actual cost of the property, that subject would have been one of the elements to be taken into consideration, with the other matters mentioned, in determining what was the value of the property, including the franchise, at the time of the taking; in the absence of such testimony there was no error in the answer to the point. What the court did say upon the subject of the cost was entirely correct, thus, " In passing upon the value of the turnpike road, tollhouses, tollgates, the property of the plaintiff, you are not to be controlled by the cost of the original construction. It is not a question of original cost but of value at the time of taking." The court then proceeded to illustrate the matter fully and with absolute correctness, so there could be no question of misunderstanding on the part of the jury. Of course the jury was not to be controlled by the element of cost, but were to consider all

the elements affecting the question of value at the time of the taking.

The introduction of proof of the returns made by the officers of the company to the state authorities, as to the value of the plaintiff's capital stock, was certainly legitimate. Those returns were the acts of the plaintiff's officers. They were made under oath and constituted important official documents. They were evidence, therefore, on the subject of the value of the stock at the time of the taking, and hence were proper for the consideration of the jury. The very question was ruled in the case of Mifflin Bridge Co. *v.* Juniata County, supra. We there say, " It was clearly competent therefore for the defendant to show the value placed by the company upon its own stock, a valuation made upon oath by its own officers. It is no answer to this to say that the return was made by the officers and not by the stockholders. The officers were the duly constituted agents or representatives of the latter, and their act was the act of the corporation itself. The return was made in pursuance of the act of assembly, and was the official act of the corporation. Hence we need not discuss the cases cited as to the power of an agent to bind his principal by his declarations. They are not relevant. While its return does not conclude the bridge company upon the question of value, it is nevertheless competent evidence for the consideration of the jury, and is moreover important." We do not think there is any force in the contention that all or none of the returns should have been offered and received. Each return is independent of the others and speaks for itself. If it was an admission against interest it was admissible for that reason, and its competency would not be destroyed or affected because there were other returns for other years.

The sixth and seventh assignments are not sustained.

We do not consider that there was any error in the parts of the charge complained of in the eighth and ninth assignments. The circumstance that unless the road was completed by March 16, 1899, the franchise was subject to forfeiture under the law, certainly was an element affecting value. If the franchise might by any possibility be subject to termination and forfeiture in so short a time, it would certainly be much less valuable than if it continued for a long period. And if in order

to avoid that penalty it was necessary to double the length of the road by additional construction to that extent, most certainly that obligation would be of very great consequence in determining the present value of the franchise, and consequently of the property. If the business of the road was profitable and prosperous it would probably enhance the value of the property, but if the contrary was true, it would simply increase the burdens of the company, and might seriously impair the marketable value of the property. The assignments are not sustained.

Judgment affirmed.