# Somerton Turnpike.

*Turnpike roads—Condemnation for public use—Duties of master—Act of June* 2, 1887, *P. L.* 306.

Proceedings to condemn a turnpike road and free it from tolls and tollgates, will be set aside where the master in violation of the Act of June 2, 1887, P. L. 306, in his charge to the viewers expresses his opinion on facts and values, minimizes the testimony of witnesses called by the turnpike company, gives his opinion of the effect of such testimony and the measure of credence to be given to it, and instructs the jury in effect to ignore the roadbed proper in estimating the damages.

The measure of damages in proceedings to condemn a turnpike road is the value of the property at the time of the taking to the owners, not only the mere value of the road itself, the mere structure or physical turnpike, its tollhouses and gates, but plaintiff's entire property rights with the value of its franchises in connection with those property rights under and by virtue of which they are used and enjoyed.

The roadway of a turnpike is property, and is worth to the municipality the amount it would have cost the latter to have graded and macadamized the road as it was when taken.

Argued Oct. 19, 1900. Appeal, No. 178, Oct. T., 1900, by the President and Managers of the Bustleton and Somerton Turnpike Road Company, from order of Q. S. Phila. County, March T., 1899, Docket 46, page 401, dismissing exceptions in proceedings to condemn and free from toll the Somerton turnpike. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed.

Petition of residents and taxpayers for the appointment of a jury to condemn and free from toll the Somerton turnpike.

From the record it appeared that Albert D. Wilson, Esq., was appointed master. Hearings were had and testimony was taken, and the jury of view after having been instructed by the master, fixed the value of the franchise within the city limits and the tollhouses at $24,000.

The following exceptions were filed to the charge of the master:

2. Because the master charged the jury as follows: "If you should condemn this road, you will take from the corporation what it has, and it has only what its charter gives it. As I read the charter, in the light of these historical facts the corporation has the use of the land over which the road runs; it has the use of the roadbed; it has the use of the foundation and surface stones; it has the use of its bridges, and that it has that use for a single purpose, single so far as the corporation is concerned, viz., the one use of taking toll from travelers who travel over the road otherwise than on foot. The company would have no right to take up the stones in the roadbed and carry them away, no right to take away the bridges or take away or disturb or remove any other of the equipment which the public uses in traveling over the road. The road is a highway, and if in any sense the road as a road can be considered property, that property is in the commonwealth of Pennsylvania. What you are condemning, if you condemn anything, is not land and stones and bridges, but a franchise, a privilege. The privilege which this company has to collect toll from travelers.

I can see nothing physical or tangible about this, except it may be their tollhouses and tollgates and outhouses. The company has, it seems to me, all that it has the right to take away without further consent. It can take away the tollhouses, tollgates and outhouses appurtenant, and I say to you that if you condemn this privilege of taking toll and take that privilege away from the company, you are to award to the company the value thereof. The value to the turnpike company at the time of taking, viz: at the present time and to add thereto the value of the one, two, three or four tollhouses, tollgates and outhouses alongside of the portion so condemned."

3. Because the master declined the first point requested by the turnpike company, which was: "If the jury shall determine, upon considering the evidence for the petitioners, to condemn that portion of the turnpike within the limits of the city of Philadelphia or any part thereof, the measure of damages or amount of compensation to be paid to the company is to be determined by the actual present value of its roadbed, bridges and tollhouses within the city limits or part thereof, together with the value of the franchise of the nine miles within the city limits or of such parts as may be taken."

4. Because the master declined the second point, which was: "The value of the roadbed, bridges and tollhouses is to be determined by the evidence before the jury showing their value, not to the city, but to the company; that is, what it would cost the company, immediately before the taking, to construct the same roadbed, bridges and tollhouses, in the same condition as they now are and in the same place."

And in declining said point, added, "I have already said to you that the company's interest in the roadbed and bridges is but a use interest. Therefore the only consideration that you are to give them is of the use they are to the company in the exercise of its franchise, viz : the collection of toll; and here you will see the distinction between the view taken by the counsel for the company and the view taken by the master, is more theoretical than practical, because the value of the bridges and roadbed even if owned by the company is largely determined by their earning capacity. You will remember the charter of the company imposes on the company the duty of keeping the road in repair. Inasmuch as the charter of the

roadbed and the permanency of the bridges tend to lighten the burden of keeping the road in repair, you may consider these qualities, but aside from this feature, they do not enter in the case. I have told you that you are to add to your award to the company such value as you may think the tollhouses used by the condemned portion have."

5. Because the master declined the fourth point, which was, " while the present condition of the surface of the road, and the cost of putting it in repair, may or may not be proper subjects for the consideration of the jury in determining whether they will condemn, neither of these matters bear any relation whatever to the question of the damages to be awarded to the company. That is to be determined solely by the value of the roadbed, the bridges and tollhouses as they exist today, together with the value of the franchise of that portion of the road within the city limits."

6. Because the master declined the seventh point, which was: " The jury are not entitled to consider any portion of the turnpike or any items of expense or income, except for the nine miles within the city limits or part thereof."

7. Because the master declined the tenth point, which was: " No claim is made by the turnpike company for the fee of the land covered by its road, bridges and tollhouses, but this fact has no bearing upon the present value of the said roadbed, bridges and tollhouses, and the company is entitled to recover their said present value, irrespective of any question as to the ownership of the fee of the land."

The court dismissed the exceptions.

*Errors assigned* were in dismissing exceptions to the master's report.

*G. Heide Norris*, with him *S. Henry Norris*, for appellant.— We know from the charter (act of 1840) that the company was granted the right to construct its road over the old road of the Bustleton and Smithfield turnpike, and to operate it perpetually as a toll road. This is a perpetual easement such as is granted to all turnpike companies: Ridge Turnpike Co. v. Stoever, 2 W. & S. 548; Fisher v. Coyle, 3 Watts, 407.

When a perpetual easement is condemned, the rule of com-

pensation is the same as when the fee is taken, that is, the market value; and when there are improvements upon the land, the owner is entitled to their reasonable value: Hough v. Doylestown Boro., 4 Brewster, 333; Heckscher & Co. v. Shenandoah Citizens' Water & Gas Co., 2 Leg. Chron. Rep. 273; Bell v. Ohio & Pa. R. R. Co., 1 Grant, 105; P., W. & B. R. R. Co. v. Williams, 54 Pa. 103; Lycoming Gas & Water Co. v. Moyer, 99 Pa. 615; Philips v. P. & R. Terminal R. R. Co., 184 Pa. 537.

A turnpike company is entitled in condemnation proceedings to recover not only the value of its franchise, based on income producing capacity, but also for the value of its physical turnpike or roadbed, bridges and tollhouses: West Chester & Wilmington Plank Road Company v. Chester County, 182 Pa. 40; Mifflin Bridge Co. v. Juniata County, 144 Pa. 365; Montgomery Co. v. Schuylkill Bridge Co., 110 Pa. 54; Clarion Turnpike & Bridge Co. v. Clarion County, 172 Pa. 243; In re Kensington & Oxford Turnpike Co., 97 Pa. 260.

*Chester N. Farr, Jr.*, assistant city solicitor, with him *John L. Kinsey*, city solicitor, for appellee, cited: West Chester & Wilmington Plank Road Co. v. Chester County, 182 Pa. 40; Clarion Turnpike & Bridge Co. v. Clarion County, 172 Pa. 243.

OPINION BY ORLADY, J., February 14, 1901:

These proceedings were instituted upon a petition of resident taxpayers of the county of Philadelphia, under an Act of June 2, 1887, P. L. 306, to condemn for public use, free from tolls and tollgates, a section of the turnpike road, within the limits of the said county, belonging to the Bustleton and Somerton turnpike road company, a corporation which had been duly incorporated under an act of April 14, 1840, P. L. 324. A jury of viewers and a master were appointed by the court of quarter sessions, before whom a number of witnesses were examined, and who made a report by which a portion of the turnpike road within the county was condemned for public use, free from tolls and tollgates, and the damages to the company were assessed at $24,000.

To this report exceptions were filed, and after a hearing thereon, the exceptions were overruled, and the report of the

viewers was confirmed by the court.  From this action of the quarter sessions this appeal is taken, and the assignments of error all relate to alleged errors of the master in his charge or instructions to the jury of viewers.  The act of 1887 prescribes an unequivocal mode of procedure to effectuate the condemnation of turnpike roads for public use, and the decisions of the Supreme Court as clearly define how "the damages to which the owner or owners thereof may be entitled therefor" are to be ascertained.

The statute declares that the master, "shall not vote on any question of fact or value," and directs that he is to "instruct the viewers upon matters of law."  These provisions of the act were disregarded in this case by the master in minimizing the testimony of witnesses called by the company, and in giving his opinion of the effect of such testimony, as well as the measure of credence to be given to it.  Some parts of the charge present the case more in the language of advocacy than of dispassionate legal instruction.  To tabulate and compile the annual statements of gain and loss, to prove that the part of the road outside of the county had been run at a loss, to urge that the company's calculation "must be read with great allowances, and in the exercise of an active judgment," to argue to the jury that "I cannot believe that the figures which have been given to you by the company as the basis of their claim would have made more than the slightest impression upon your minds as a proper basis, nor do I believe that the company could be regarded as sincere in making a claim for damages," to say of the statement submitted from the books of the company, that it, "gives a greater sum as the earnings of the road within the city limits than is warranted by a correct view of the facts," and similar suggestions of like import, were indicative of a positive opinion in the mind of the master, and must of necessity have had a determining influence on the jury.  The objection is not to the statements, but to their source.  It was not intended by the statute that such a presentation of the case, while legitimate if urged by counsel, or considered by the jury, should be made by the master, and it was improper, for the reason that the damages were to be assessed by the jury, unaided by the opinion of the master as to any "question of fact or value."  The master further instructed the jury, as matter of

law, that, " the road is a highway, and if in any sense the road
as a road can be considered property, that property is in the
commonwealth of Pennsylvania.   What you are condemning,
if you condemn anything, is not land and stone and bridges,
but a franchise, a privilege.   The privilege which the company
has to collect toll from travelers."   The condemnation proceed-
ings were intended to, and would for all purposes, take from
the company all and every kind of its property within the sec-
tion of the turnpike which the jury would condemn for public
use, as part of, or as appurtenant to, its corporate rights.   The
measure of damages in such a case is the value of a property to
the owner, not to the county taking it: Montgomery County v.
Schuylkill Bridge Company, 110 Pa. 54.   In a similar case, the
Supreme Court held that, " It is just compensation for the loss
suffered in consequence of the taking of the property, being the
substructure, superstructure, and approaches to the bridge, to-
gether with the right to take tolls, and the jury have no right
to find less : " Clarion Turnpike & Bridge Company v. Clarion
County, 172 Pa. 243.

The rule has but recently been stated . to be " the measure
of damages is the value of the. property at the time of tak-
ing to the owners, not only by the mere value of the road it-
self, the mere structure or physical turnpike, its tollhouses and
gates, but plaintiffs' entire property rights with the value of
its franchises in connection with those property rights under
and by virtue of which they are used and enjoyed: " West
Chester & Wilmington Plank Road Co. v. Chester County, 182
Pa. 40.   The master in effect instructed the jury to ignore the
roadbed proper in estimating the damages, because as he states,
" the company's interest in the roadbed and bridges is but a use
interest, therefore the only consideration you are to give them is
of the use they are to the company in the exercise of its fran-
chises."   It is true that the turnpike company is not the absolute
owner in fee of the roadbed, but it may have expended large sums
of money in constructing a roadway, bridges, culverts and drains
within its right of way, which are necessary parts of its cor-
porate property taken as a whole, and without which improve-
ments the property would be of little value.   As was said in
In re Kensington and Oxford Turnpike Company, 97 Pa. 260,
" The roadway of the turnpike company was a visible, tangible

thing. It was property which necessarily cost the company a large amount of money. It was worth to the company just what a jury would give them in this proceeding. It was worth to the city the amount it would cost the latter to have graded and macadamized the road as it was when taken." If condemned for public use, such turnpikes, road or highway, free from tolls and tollgates, in this section of the turnpike, and its franchise in connection with those property rights, under and by virtue of which they are used and enjoyed, is taken from the company, and thereafter, that portion belongs to the public and shall be repaired and maintained at the expense of the county as other public roads are by law repaired and maintained. All that is taken from the company should be paid for, no less and no more, and all that is taken—not may but must be—considered by the jury of viewers in determining the reasonable damages the county should pay for taking the property of this turnpike company for public use.

The first, second and third assignments of error are sustained. The points submitted by the turnpike company as represented by the other assignments of error were not entitled to an unqualified affirmance. On a rehearing all danger of error can be averted by adopting the measure of damages laid down in the cases above cited.

The judgment of the court below is reversed and record remitted with a procedendo.