# Clarion Turnpike and Bridge Company *v.* Clarion County, Appellant.

|172 243|
|182 48|

172        243
20 SC ⁴180

172        243
f223      ²324

*Bridges—Turnpike companies—Highways—Act of April 10, 1862— Acts of May 8, 1876, and April 14, 1863.*

Under section 5 of the act of April 10, 1862, P. L. 366, providing that should the county commissioners of Clarion county neglect and refuse to erect a bridge over the Clarion river at or near the point where the Susquehanna and Waterford Turnpike Road strikes said river, " the company, aforesaid (The Clarion Turnpike & Bridge Co.) are hereby authorized to erect a toll bridge at its own expense and costs, and to have the exclusive control thereof, and to levy a toll on all persons and property passing over the same, not to exceed in amount that authorized to be collected on two sections of the turnpike, and on all footmen, not to exceed two cents for each and every passage ; " the authority in the turnpike company to construct and maintain a bridge at the point in question is a grant distinct and separate from the general powers to maintain and operate a turnpike road.

In such a case if proceedings are instituted under the act of May 8, 1876, P. L. 131, to free the bridge, the county acquires the bridge, but not a part of the turnpike, and by such acquisition it not only takes the structure and approaches, but a distinct and separable part of the company's franchises.

The Act of April 14, 1863, P. L. 429, relating to tolls of the Clarion Turnpike and Bridge Company, has reference to tolls on the turnpike road, and by no reasonable construction can it be made to include the bridge expressly authorized by section 5, of the act of April 10, 1862, P. L. 366, for which a special rate of tolls is fixed.

*Bridges—Measure of Damages—Proceedings to free toll bridge.*

Where a bridge is taken by a county for public use under act of May 8, 1876, P. L. 131, the true measure of damages is just compensation for the loss suffered by plaintiff in consequence of the taking by defendant of plaintiff's property, being the substructure, superstructure and approaches to the bridge, together with the franchise or right to take tolls, and the jury have no right to find less : Mifflin County Bridge v. Juniata County, 144 Pa. 374 ; Montgomery County v. Bridge Company, 110 Pa. 54, approved.

In a proceeding to free a toll bridge owned by a turnpike company, it is immaterial, on the question of damages, that at times part of the net receipts were appropriated to keep up the turnpike road, as this in no way tended to depreciate the value of the bridge ; that there were net earnings was important ; what use was made of them was immaterial.

It seems that even if the bridge were an inseparable part of the turnpike, and the whole should be treated as one corporate property, the part taken, i. e. the bridge, should be estimated at its true value, when compared with the whole.

Argued Oct. 7, 1895.  Appeal, No. 10, Oct. T., 1895, by defendant, from judgment of C. P. Jefferson County, February Term, 1891, No. 14, on verdict for plaintiff.   Before STER-RETT, C. J., GREEN, WILLIAMS, MCCOLLUM, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Proceedings to free a toll bridge over the Clarion river, belonging to the Clarion Turnpike and Bridge Company.   Before CLARK, P. J.

The facts appear by the opinion of the Supreme Court.

The court charged in part as follows:

[Now, gentlemen of the jury, the plaintiff maintains and claims that the act of 1863 is not a repeal of the fifth section of the act of 1862, which gave it the right to erect this bridge that is now in dispute; while the defendant contends that by the wording of the act, either directly or indirectly, that section is repealed because of that portion of the second section of the act of 1863 which reads, " That in lieu of the tolls authorized heretofore, the said Clarion Turnpike and Bridge Company are hereby authorized to erect gates and levy tolls," etc., and of the clause which follows in the same section, " That so much of the act of incorporation and its supplements as are inconsistent herewith be and the same are hereby repealed."

That is what the defendant contends, and it remains for us to place our construction upon the act, which of course is to govern you, together with the evidence in the case.   We may possibly be in error, but we think we are not.   Our construction would be in support of the plaintiff's position in this case. Reading the whole act and taking it together, we think it refers particularly to the tolls on the turnpike, and if it were intended as a repeal of the fifth section of the act of 1862, the legislature would have said something in it referring to the tolls on this bridge.] [1]

Defendant's points were as follows:

1. In determining the value of the property in dispute the jury are to take into consideration the value of the structure taken and the pro rata value of the franchise under which the structure was erected.   *Answer.:* We refuse this point for the reason stated in our general charge, and a construction which we have placed on the act of 1863 as to repealing the fifth section of the act of 1862. [2]

2. That in valuing the franchise of the plaintiff the jury should consider the burdens imposed on the company by its charter as well as the advantages conferred; and if the burdens exceed the advantages, the pro rata share of the difference should be subtracted from the value of the structure in fixing the damages in this case. *Answer:* Refused. This is all looking in the same direction. Our reasons for this are, that it may be there were very little receipts outside of this bridge, and the value to this company—the principal value of the franchise—may be in this bridge; there may be very little after this bridge was taken away; but under our view of the law you are to treat this bridge just as it stands there and the franchises that are connected with it. [3]

3. Even if the plaintiff be entitled to recover the value of the structure of the bridge at the time it was taken by the county, if the jury find from the evidence that the burdens imposed by the plaintiff's charter were equal to or greater than the advantages conferred, then there should be no damage allowed for the pro rata share of the franchise taken. *Answer:* Refused. [4]

4. That all the obligations and restrictions imposed by the act of 1812, incorporating the Susquehanna and Waterford Turnpike, except as excepted by the act of 1863, are applicable to the charter of the plaintiff. *Answer:* We answer this point in the affirmative with this exception, as to the bridge: the power to erect this bridge was vested in this company under the fifth section of the act of 1862. [5]

5. That in making up their verdict the jury are to consider the evidence of the capital stock of the company, the evidence of the value or want of value of the franchise, and the value of the structure, and should not disregard any one of these elements in determining the value of the property. *Answer:* We answer this point in the affirmative as applicable to the bridge in dispute and its franchise. [6]

6. That the supplement of the 14th of April, 1863, to the act of the 10th of April, 1862, incorporating the plaintiff company, established a rate of tolls for the Clarion Turnpike and Bridge Company in lieu of the tolls established by the act of 1862 and repealed the rate fixed by the last named act; and after the act of 1863 was passed and accepted by the plaintiff,

no additional tolls could be charged for the bridge separate and apart from the tolls fixed by the act of 1863 for the turnpike and bridge company. *Answer:* Refused. [7]

Verdict for $7,081.61. On remittitur filed judgment was entered for $5,700. Defendant appealed.

*Errors assigned* were (1–7) above instructions, quoting them.

*G. A. Jenks, Hindman & Hockman* with him, for appellant.

The grant of privileges and exemptions to a corporation are strictly construed against the corporation and in favor of the public. Nothing passes but what is granted in clear and explicit terms: Ohio Life Ins. & Trust Co. v. Debolt, 16 Howard, 435 ; Minturn v. Larue, 23 Howard, 436 ; Com. v. Erie & North East R. R., 27 Pa. 351; Diligent Fire Co. v. Com., 75 Pa. 295.

The first section of the act of 1863, in literal terms applies to " All that part of the Susquehanna and Waterford turnpike road in the counties of Clarion and Venango east of the Allegheny river." That covers all the road in Clarion county and embraces the bridge in dispute.

A subsequent statute, revising the whole subject-matter of a former one, and evidently intended as a substitute for it, although it contains no express words to that effect, must, on the principles of law, as well as in reason and common sense operate as a repeal of the former: Johnston's Est., 33 Pa. 511 ; Gwinner v. Lehigh R. R., 55 Pa. 126 ; Ledlie v. Monongahela Navigation Co., 6 Pa. 392.

The measure of damages is the value of the property to the owner, not to the county taking it, and that such value is to be ascertained not only by the cost of the structure, but also by the value of the franchise : Mifflin Bridge Co. v. Juniata Co., 144 Pa. 365.

If it cost more to keep the bridge in repair than the whole amount of toll received it would be valueless, for it is only the net income in excess of the regular and necessary outlay that would be of any profit to the owners. The value of the structure and the value or want of value of the franchise must both be considered in determining the measure of damages for the property taken : Montgomery County v. Bridge Co., 110 Pa. 59.

We contend that when the company accepted its charter under

the acts of 1862 and 1863, it accepted also the conditions on
which the charter was granted.   The duties imposed were the
considerations for the grant.   It could not accept as to part
and refuse to accept as to the balance.   It could not accept
that which was profitable and reject that which was unprofit-
able.   It could not accept the benefits and reject the burdens:
Penna. R. R. v. Com., 3 Grant, 129; Penna. & Ohio Canal Co.
v. Graham, 63 Pa. 296; Turnpike Co. v. The State, 3 Wall. 210.

A charter cannot be accepted in part.   It must be accepted
entire, as it is offered, if at all: 1 Abbott's Dig. of Laws of Cor-
porations, 146; Riddle v. Proprietors of Locks and Canals, 7
Mass. 169; Goshen Turnpike Co. v. Sears, 7 Conn. 86.

*J. T. Maffett* and *Charles Corbet*, for appellee.—Statutes
authorizing the right of eminent domain, being a derogation of
private right, are to be strictly construed against the power
exercising it: Lance's App., 55 Pa. 16; Harding v. Goodlett,
3 Yerger, 40; Bird v. Wilmington etc. R. R., 8 Richardson's
Eq. 46; 1 Spelling on Private Corporations, sec. 242.

Under the act of 1862 there was a schedule of tolls for the
turnpike and a schedule for the bridge; can there be any doubt
but that the act of 1863 substituted a new schedule for the
turnpike road alone, leaving the toll for the " toll bridge " to
be collected as provided in the act of 1862?   And there is not
the least inconsistency in this.   The law does not favor a repeal
by implication: Western Saving Fund Society v. Philadelphia,
31 Pa. 175; Egypt Street, 2 Grant, 455; Erie v. Bootz, 72 Pa.
196; Homer v. Com., 106 Pa. 221; Rutherford v. Maynes, 97
Pa. 78; Williamsport v. Brown, 84 Pa. 438; Contested Elec-
tion of Barber, 86 Pa. 392; Com. v. Erie Ry., 98 Pa. 127; Sei-
fried v. Com., 101 Pa. 200; Bloodgood v. Mohawk etc. R. R.,
18 Wend. 9; Boisdere v. Citizens' Bank, 9 La. 506; Preston
v. Drew, 33 Me. 558.

A long established construction of a statute by those who
execute it ought to have the force of a judicial determination:
Bruce v. Schuyler, 4 Gil. 221; s. c., 46 Am. Dec. 447; Com.
v. Posey, 4 Call. 109; Sutherland on Statutory Cons. sec. 307;
Rogers v. Goodwin, 2 Mass. 476; Com. v. Stewart, 6 Law
Times (Pa.), New Series, 159.

Charters creating corporations for private purposes, laws

giving franchises, are inviolable contracts, the obligations of which are secured by the constitutional provisions that no state shall pass any law impairing the obligation of contracts: Sutherland on Statutory Constructions, sec. 473 ; Cooley's Con. Lim. 361.

OPINION BY MR. JUSTICE DEAN, January 6, 1896 :

The Susquehanna and Waterford Turnpike Company was, by special act of February 22, 1812, chartered to construct a turnpike from Waterford in Erie county to the Susquehanna river near the mouth of Anderson's creek in Clearfield county. The company was duly organized, and in the year 1820 built its road on its route between terminals, from Brookville, Jefferson county, to Franklin, Venango county. About the year 1856 this part of the pike was abandoned, and was taken in charge as a public road by the supervisors of the townships through which it ran. By act of 10th of April, 1862, the plaintiff company was chartered, and authorized to appropriate so much of the old Waterford turnpike as lay between the west line of Clarion county and the borough of Brookville, Jefferson county ; and further, to charge such tolls as were allowed to be collected by the charter of the old company. It was also, by the fifth section of the same act authorized to erect and maintain a bridge over the Clarion river, where the old turnpike struck the river, and to charge tolls for the use of the bridge to an amount not exceeding such tolls as were authorized to be collected by the turnpike company for two sections of five miles each on the turnpike. By a subsequent act, that of 14th of April, 1863, the same company was authorized to reconstruct all of the old pike east of the Allegheny river, and further, to increase its rate of tolls for use of the road between the Allegheny river and Brookville about nineteen per cent. In 1865 the plaintiff built the bridge over the Clarion river, half a mile west of the borough of Clarion. It is a wooden covered bridge, about 221 feet, single span, with stone abutments and proper approaches : this took the place of one erected by the company two years before, but which had been swept away by a flood. The company went on collecting tolls for the use of the bridge, until April sessions, 1890, of Clarion county, when proceedings were instituted under the act of 8th of May, 1876, to acquire the

bridge for the county, that it might thereafter be made free to the public. That act provides that on petition of at least twenty taxpayers to the court of quarter sessions, setting forth that a bridge is necessary to the accommodation of the traveling public, and that the payment of tolls is burdensome, the court shall appoint viewers who shall view and report whether the bridge is necessary as a free bridge for public accommodation, and whether the payment of tolls is an unjust burden on the traveling public and the people of the townships where the same is located; also the amount of damages which shall be sustained by the company owning the bridge by the taking thereof. The right of appeal from the award on confirmation of the report by the common pleas was given to both the company and the county. In this case, viewers were appointed, who awarded damages in sum of $2,500; the company appealed, and on trial the jury awarded $7,081.61; on motion for new trial, the court directed the company to remit all in excess of $5,700, or new trial would be granted; on the company filing paper remitting excess, judgment was entered on the verdict against the county for $5,700. The county now appeals, assigning eight errors. All these alleged errors hinge on the construction or effect to be given to the fifth section of the act of 1862, which authorized the erection of the bridge. That section reads thus:

" That should the commissioners of Clarion county elect to erect a county bridge over the Clarion river at or near the point where the Susquehanna and Waterford turnpike road strikes said river, and maintain and keep the same in repair, the company hereby incorporated shall have no power or authority over the same, but it shall be the exclusive property of said county, and under its control; but should the said county commissioners neglect and refuse to erect a bridge as aforesaid, the company aforesaid are hereby authorized to erect a toll bridge at its own expense and costs, and to have the exclusive control thereof, and to levy a toll on all persons and property passing over the same, not to exceed in amount that authorized to be collected on two sections of the turnpike, and on all footmen, not to exceed two cents for each and every passage."

The reasonable interpretation to be given this section, when read in connection with the whole act authorizing the appropri-

ation of the roadbed of the old turnpike company, is that the authority to construct and maintain the bridge at this point is a grant distinct and separate from the general powers to maintain and operate a turnpike. In fact, the only reference to the turnpike is that part of the section which measures the authorized tolls by the amount allowed to be charged on two sections of the turnpike. When the authority to erect the bridge is given, the right of the county is expressly saved; if it declines to build, then only is the company authorized to build. The company has authority to build at a particular point, and to have the exclusive control thereof; then, it will have two separate properties and franchises; the turnpike road and the bridge. If the county had built the bridge, it would not have affected the right of the company to operate its road on each side of it; the bridge would have been free, but the traveler over it would have had no right of free passage through the turnpike gates. So the county, by the proceedings, acquired the bridge, but not a part of the turnpike, and by this acquisition it not only took the structure and approaches, but a distinct and separable part of the company's franchise. The question then simply is what damage did the company sustain by the taking of the bridge and the loss of the franchise? All the evidence as to how much the company lost on the turnpike and bridge as a whole is to a great extent immaterial, because it has but little if any bearing in a determination of the value of the bridge to the company. The rule is that adopted by the court below, as stated by this court in Mifflin County Bridge v. Juniatia County, 144 Pa. 374, and in Montgomery County v. Bridge Company, 110 Pa. 54. "Where a bridge is taken by a county for public use under act of May 8th, 1876, the measure of damages is the value of the property to the owners, not to the county taking it, and such value is to be ascertained, not only by the cost of the structure, but by the value of its franchises. The value of its franchises depends largely upon its earning power." The court, after stating this rule, then called the attention of the jury to the elements entering into an estimate of the value such as the cost of the structure, the net tolls, and market value of stock if it had a market value. There was evidence that the original cost of the structure was ten to twelve thousand dollars; that when taken by

the county in 1890, it had been in existence and use about twenty-five years; there was conflicting evidence as to the extent of deterioration by time and use; some of the evidence tending to show it was almost worthless and would soon have to be replaced, and other evidence that it was about as substantial as when first erected. Then as to the net receipts of tolls for the five years prior to the taking, it was shown they averaged about $700 per year. At times part of the net receipts were appropriated to keep up the turnpike road; but this in no way tended to depreciate the value of the bridge. That there were net earnings, was important; what use was made of them was immaterial.

All the conflicting evidence was submitted to the jury in a very full and careful charge, the summing up of which is the instruction requested in plaintiff's third point: " That the true measure of damages is just compensation for the loss suffered by plaintiff in consequence of the taking by defendant of plaintiff's property, being the substructure, superstructure and approaches of the bridge, together with the franchise or right to take tolls, and the jury have no right to find less." There could have been no more correct statement of the law.

The argument of appellant, that the supplement of April 14, 1863, established a new rate of tolls for both turnpike and bridge company, in place of that in the act of 1862, and that no tolls could thereafter be charged for the bridge separate from the turnpike company, cannot be sustained. The act of 1863, throughout, has reference to tolls on the turnpike road, and by no reasonable construction can it be made to include the bridge expressly authorized by the fifth section of the act of 1862, for which a special rate of tolls was fixed.

Even if the bridge were an inseparable part of the turnpike, and the whole should, as appellant contends, be treated as one corporate property, the part taken, the bridge, should be estimated at its true value, when compared with the whole. If the gross receipts of this part were larger in proportion and the net also than any other part of the property, and the bridge be taken from them, they lose that part of their property which is of the greatest value. The principle contended for by appellant that, if the corporate property as a whole yields no net income a part of it is of no value, is palpably unsound; the

productiveness of a comparatively small part of a railroad, canal or turnpike may maintain for public use and keep in repair, under the charter, the whole; with this valuable part the corporate property may be kept in serviceable condition, and operated, without dividends, until a change of times, increases in population, more rigid economy, or wiser management, makes the whole remunerative; take away this productive part, and the corporation is at once hopelessly bankrupt. Common observation has demonstrated that many corporate enterprises have become sources of large income to their stockholders, by the mere ability to survive for a few years, in the absence of any net income from the property as a whole.

It will be noticed the act of 1876 provides that when paying tolls is too burdensome to the public, the county is authorized to acquire the bridge; the argument of the learned counsel for appellant tends to the conclusion that if the property be burdensome to the owners, the public should come to their relief by confiscating it. This is a misapprehension; the act is not based on a sort of guardianship of improvident owners, who persist in holding on to unproductive property, but on the idea that private property may be taken for public use, when the interest of the public is thereby promoted; but when thus taken, the public must pay for it in reasonable damages.

All the assignments of error are overruled and the judgment is affirmed.