# Washington County v. Pennsylvania Railroad Company, Appellant.

*Highways—Turnpike roads—Bridges—Acceptance of street—Vacation of street.*

1. Bridge street, within the limits of Monongahela City, in Washington County, though embraced with the limits of the city after its incorporation, was never one of the actual streets of Monongahela City, but was part of the old turnpike bridge across the Monongahela river. It became the property of Washington County under condemnation proceedings in 1904 and was lawfully vacated in 1907 by the proceeding consequent upon the appointment by the Courts of Quarter Sessions of Allegheny and Washington Counties of viewers to report on the vacation of the old turnpike bridge and the location of a site for a new one.

2. Where it appears from sufficient and competent evidence that an approach to a bridge is in fact the property of the company owning the bridge, it is immaterial that scriveners in deeds described the approach as a street, or that it had been placed upon a city map as a street, or that it had been in part paved by the city under a special contract with property owners.

Argued October 16, 1912. Appeal, No. 107, Oct. T., 1912, by defendant, from judgment of C. P. Washington Co., May T., 1911, No. 177, for plaintiff in case of Washington County v. Pennsylvania Railroad Company. Before BROWN, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Assumpsit to recover money due under an agreement. Before McILVAINE, P. J., without a jury.

The opinion of the Supreme Court states the case.

*Errors assigned* were in overruling exceptions to the adjudication of the court and to the decree.

*R. W. Irwin,* with him *James A. Wiley,* for appellant. —The use of the ground by the public as a highway for more than twenty-one years makes it a public road as effectually as though it had been originally laid out by the proper authorities: Com. v. Cole, 26 Pa. 187; Griffin's Appeal, 109 Pa. 150; Com. v. Llewellyn, 14 Pa. Superior Ct. 214; Root v. Com., 98 Pa. 170; Com. v. R. R. Co., 135 Pa. 256; Com. v. Moorehead, 118 Pa. 344.

Where a road has been dedicated to public use by the owner of the land and that dedication has been accepted by the public, the municipality in which it is situated has no power, in the absence of legislative authority, to vacate it or relinquish the rights of the public in it: Pittsburgh v. Epping-Carpenter Co., 194 Pa. 318.

If it was a public highway, either by long continued use or by dedication to the use of the public and had been accepted by the public, even though it had not been accepted as a street by the city, the Quarter Sessions Court had no power to vacate it: Pittsburgh v. Epping-Carpenter Co., 194 Pa. 318; Wickham v. Twaddell, 25 Pa. Superior Ct. 188; Askin's Lands, 17 Philadelphia 660; Wayne St., 2 Del. County 115; Osage Street, 90 Pa. 114; Com. v. Female College, 42 Pa. Superior Ct. 419; Sterrett Twp. Road, 123 Pa. 231.

*Isaac W. Baum,* for appellee.—The approach was not a street: Oberly v. Hapgood, 3 Lancaster Law Rev. 234; Com. v. Philadelphia, Etc., R. R. Co., 135 Pa. 256.

Where a bridge is taken by a county for public use under the Act of May 8, 1876, P. L. 131, the true measure of damages is just compensation for the loss suffered

by the plaintiff in consequence of the taking by the defendant of plaintiff's property, being the substructure, superstructure and approaches to the bridge, together with the franchises or right to take tolls, and the jury have no right to find less: Clarion Turnpike & Bridge Co. v. Clarion County, 172 Pa. 243; Mifflin Co. Bridge v. Juniata County, 144 Pa. 365; Montgomery County v. Bridge Company, 110 Pa. 54.

The meaning of the words, "roads, streets and alleys" in the Act of April 3, 1851 (P. L. 320), is confined to such as begin and end in the borough, and not to such roads as are or may be opened through the borough of which a part only is within the borough limits: Palo Alto Road, 160 Pa. 104.

OPINION BY MR. JUSTICE BROWN, January 6, 1913:

The Pennsylvania Railroad Company agreed, in writing, to pay the County of Washington the sum of $22,-500, if, in the relocation and construction of an inter-county bridge, there should be lawfully vacated a street about one hundred and seventy feet in length, known as Bridge street, and extending from the old or abandoned bridge to Main street, in Monongahela City. The tracks of the railroad company crossed Bridge street at grade, and the inducement to the company to make the agreement with the county was to get rid of this grade crossing. The material facts involved in this action upon the agreement are uncontroverted. The pivotal question is as to an inference drawn from them by the learned trial judge, to whom the case was submitted under the provisions of the Act of April 22, 1874, P. L. 109.

Some time prior to the year 1832 the Washington and Williamsport turnpike—a toll road—was located and constructed between Washington and West Newton, in this State. This turnpike ran to the Monongahela river, near the village of Williamsport, and, at first, travelers over it were carried across the river in ferry

boats.  About the year 1838 a bridge company, duly incorporated by an Act of Assembly approved March 16, 1832, P. L. 155, erected a bridge across the Monongahela river at or near the old ferry, and the same was a toll bridge until 1904.  The ferry was discontinued upon the erection of the bridge, and the public crossed over it from what had been the Williamsport pike, but is now Main street in Monongahela City.  Bridge street was the connection between Main street and the bridge.  About twenty years ago the Washington and Williamsport turnpike was legally condemned and became a county road.  This left the toll bridge with free roads approaching it on either side.  In 1904, in certain proceedings instituted in the Courts of Quarter Sessions of Allegheny and Washington Counties, the bridge across the Monongahela river was condemned and became one of the highways of Washington County, from the Washington County side to the centre of the river, and from that point on to the Allegheny side it became a public highway of that county.  About thirty years ago the Pittsburgh, Virginia and Charleston Railroad Company located and constructed a railroad up the river from the lower part of Monongahela City, and the track of its railroad crossed .Bridge street at grade.  About the year 1906 the United States Government adjudged the bridge referred to to be an obstruction to navigation and ordered it to be torn down or reconstructed in accordance with the plans of the War Department.  The Pennsylvania Railroad Company— which had in the meantime obtained control of the Pittsburgh, Virginia and Charleston Railroad—finding that the bridge would have to be rebuilt, favored a change of location, so that the grade crossing from the bridge at Main street could be avoided.  Main street, where Bridge street connected with it, was too near the river to have an overhead crossing of the railroad track at that point without making the bridge too high and the approach to it too steep, but by going down

the river about a thousand feet, where Main street was farther from the river, it was found that a suitable overhead crossing could readily be made, and the railroad company obtained an option to purchase the property of a Mrs. Stuart for $22,500, to be used in erecting the approach to a bridge on the new location, subsequently selected. The railroad company offered the commissioners of Washington County the purchase price of this lot, if, in the erection of the new bridge, a grade crossing would be avoided and the old grade crossing should be legally vacated. The agreement of the company is the basis of this action. All of the conditions upon which it was made have been complied with, except, as the appellant contends, the one relating to the vacation of Bridge street.

In 1907 the Courts of Quarter Sessions of Allegheny and Washington Counties appointed viewers to report on the vacation of the old bridge and the location of a site for a new one. The viewers stated in their report that notice of their meeting had been accepted by the authorities of the respective counties of Allegheny and Washington, by the municipal authorities of Monongahela City, by the road supervisors of Forward Township, in Allegheny County, and that the public had been duly notified as provided by law. In describing the changes and relocation of roads necessary to reach the new bridge, they reported, inter alia, as follows: "The portion of said public highway, known as the Washington and West Newton turnpike recommended for vacation, is described as follows: Beginning in Forward Township, Allegheny County, at the low water line of said Monongahela river, then crossing said river south 43 degrees and 35 minutes west 924½ feet to the Washington County end of existing bridge; thence across the tracks of the said Pennsylvania Railroad south 43 degrees and 35 minutes west 169.8 feet to Main street in Monongahela City, the street hereinbefore described." It is admitted that the proceedings

before the viewers to vacate the old bridge and to locate the site for the new one were regular, and that Bridge street was legally vacated by the proceedings instituted in 1907, if it was not one of the actual streets of Monongahela City, and if, as part of the bridge, it had become part of a county road under the proceedings in 1904 to make the bridge free. The court below found that there was such an admission and this finding is not assigned as error.

When Bridge street, or Bridge road, was laid out, it was not in Monongahela City, but in Fallowfield Township. There is no record showing that it had ever been laid out under any proceeding in the Court of Quarter Sessions of the county, or that it had ever been accepted as a street by Monongahela City or its municipal predecessor; and it does not appear as a street or way in any recorded plan of lots showing an original dedication of it to public use.

When the bridge company started to build the bridge, land intervened between the site chosen for it and the turnpike, and, unless the company could have made connection with that road, the erection of the bridge certainly would not have been undertaken. James Manown, the owner of the intervening land, released the company from any claim for damages, upon conditions as to the location of the bridge, which the evidence shows were complied with; and the fair inference drawn by the court below, after the lapse of more than seventy years from the erection of the bridge, with no living witness to testify as to the facts connected with the building of the short street or road, and with no record disclosing them, was that the bridge company, under the powers given to it by its charter, had acquired the land occupied by Bridge street, or Bridge road, because the same was necessary for its corporate purposes, and had itself laid out and built the street or road from its bridge to the turnpike. This inference is the eleventh finding of fact by the court below, which is

as follows: "It can be fairly inferred from the facts proven and the records introduced in evidence, and it is found to be a fact, that the Williamsport Bridge Company took the land of James Manown between the end of the bridge and the Washington and Williamsport turnpike then in Fallowfield Township, afterwards in Carroll, now Main street in Monongahela City, on which Bridge road or Bridge street was opened and constructed, and that the Williamsport Bridge Company opened and constructed this road as part of its corporate plant under the authority given it by its charter, and so held it until the county freed the bridge and made a county road of it." After a careful review of all the evidence in the case, our conclusion is that this finding was logical and, therefore, proper.

When Monogahela City was incorporated in 1873, it did not become vested with any authority to vacate Bridge street or change its location. It was a necessary part of the bridge company's plant—the connecting link between its bridge and Main street—and to have severed that link would have been, as the learned court below well said, a destruction of the business for which the bridge company had been incorporated. As this approach to the bridge was embraced within the limits of Monongahela City after its incorporation, the municipality could have enjoined the maintenance of any nuisance upon it and compelled the bridge company to keep it in proper repair. In recognition of this the bridge company did constantly keep it in repair, always claiming it to be its own property. The street having formed a part of the bridge company's property, acquired by it for its corporate purposes, it became the property of Washington County when all the property of the bridge company was taken over by that county under the condemnation proceedings of 1904. Under those proceedings the county acquired all the rights, property and franchises of the bridge company, except the right to continue to collect toll, and, as the street was an ap-

proach to the bridge, it entered into the damages to which the bridge company was entitled: Montgomery County v. Bridge Company, 110 Pa. 54; Clarion Turnpike & Bridge Company v. Clarion County, 172 Pa. 243.

It is true that long after the street was opened for travel from the turnpike to the bridge it is referred to by scriveners in deeds as a street upon which conveyed properties abutted, but these references, merely for the purpose of description, throw no light upon its real character as found by the court below. The same is true of the references to it in the city ordinance offered in evidence and of the placing of it on the map prepared by the city engineer showing the streets and highways within the city limits. Nor was the paving of Main street out on Bridge street to the railroad track, under a special contract with property owners, inconsistent with the claim of the bridge company to the ownership of the street. These are matters to which the learned counsel for appellant attach much importance in insisting that Bridge street was one of the accepted highways of Monongahela City, but they are not to be so regarded in the face of the other evidence in the case.

From 1904 to 1907 the bridge, from the middle of the river to the Washington County side, and the approach to it on that side, became a public road under the control of the county and subject to its supervision, with continuing liability by the county to keep it in repair. It did not become in any sense a municipal street, to be controlled by the municipality. In the proceedings in the quarter sessions in 1907 this short public highway was vacated, the vacation by the viewers including, in express terms, the link connecting the bridge and Main street "across the tracks of the said Pennsylvania Railroad Company." As Bridge street was thus legally vacated, the public no longer have any right to use it, and it no longer exists as a public crossing over the tracks of the appellant company.

The assignments of error are all overruled and the judgment is affirmed.