## Gatton, By et al. v. Fiscal Court of Daviess County, et al.

(Decided March 24, 1916.)

### Appeal from Daviess Circuit Court.

1.  Constitutional Law—Amendments to Constitution—How Considered.—Amendments to constitutions or statutes are not regarded as if they had been parts of the original instruments, but are considered rather in the nature of codicils, or second instruments, altering or rescinding the originals to the extent to which they

are in conflict, and are to be treated as having a force superior to the originals, to the extent of such conflict.

2.  Constitutional Law—Amendments.—If a constitutional amendment does not, in terms, expressly repeal a constitutional provision, yet if it covers the subject provided for in such provision, the amendment will be regarded as a substitute for it, and as suspending it.

3.  Counties—Indebtedness for Roads—Creation of—Elections—Section 157a Constitution.—Under section 157a of the constitution, an indebtedness for public road purposes may be authorized by a majority of the voters of a county who participate in an election upon that question.

ALBERT B. OBERST for appellants.

JAMES J. SWEENEY, H. A. BIRKHEAD and W. P. SANDIDGE for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER.—Affirming.

A special election was regularly called, and held in Daviess county on June 22nd, 1915, upon a proposition to issue bonds of the par value of $600,000.00, for the purpose of building roads and bridges, in that county. The election commissioners canvassed the vote and reported to the county court that 4,373 votes were cast for the proposition, and 2,445 against it. It will thus be seen that the proposition to issue bonds obtained the assent of a majority, but not of two-thirds of the electors who voted at said election.

Conceiving that under the constitution and the laws of the State of Kentucky it required the consent of two-thirds of the participating voters to carry the bond proposition, the appellant Gatton, acting for himself and on behalf of the other tax payers of Daviess county, filed this suit on December 30th, 1915, against the fiscal court of Daviess county and its individual members, seeking to enjoin them from issuing bonds pursuant to the election.

It is conceded by all parties that all the necessary preliminary steps relating to the calling and holding the election, canvassing and reporting the result thereof, were regular, and satisfied the statute in every respect; and, that the only question for decision relates to the proportion of the total vote cast that is necessary to authorize the issual of bonds for road purposes; the plaintiff contending that it required a two-thirds vote, while the de-

fendants insist that the majority vote obtained was sufficient.

The circuit court accepted the view of the defendants, and dismissed the petition; and, from that ruling, the plaintiff appeals.

The determination of this controversy depends upon the interpretation that is to be placed upon section 157a of the constitution when read in connection with sections 157 and 158 of that instrument.

Those three sections read as follows:

"157.    The tax rate of cities, towns, counties, taxing districts and other municipalties, for other than school purposes, shall not, at any time, exceed the following rates upon the value of the taxable property therein, viz.: For all towns or cities having a population of fifteen thousand or more, one dollar and fifty cents on the hundred dollars; for all towns or cities having less than fifteen thousand and not less than ten thousand, one dollar on the hundred dollars; for all towns or cities having less than ten thousand, seventy-five cents on the hundred dollars; and for counties and taxing districts, fifty cents on the hundred dollars; unless it should be necessary to enable such city, town, county, or taxing district to pay the interest on, and provide a sinking fund for the extinction of indebtedness contracted before the adoption of this constitution. No county, city, town, taxing district or other municipality shall be authorized or permitted to become indebted, in any manner or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of two-thirds of the voters thereof, voting at an election to be held for that purpose; and any indebtedness contracted in violation of this section shall be void. Nor shall such contract be enforceable by the person with whom made; nor shall such municipality ever be authorized to assume the same.

"157a.    The credit of the Commonwealth may be given, pledged or loaned to any county of the Commonwealth for public road purposes, and any county may be permitted to incur an indebtedness in any amount fixed by the county, not in excess of five per centum of the value of the taxable property therein, for public road purposes in said county, provided said additional indebtedness is submitted to the voters of the county for their ratification or rejection at a special election held for

said purpose, in such manner as may be provided by law, and when any such indebtedness is incurred by any county said county may levy, in addition to the tax rate allowed under section 157 of the constitution of Kentucky, an amount not exceeding twenty cents on the one hundred dollars of the assessed valuation of said county for the purpose of paying the interest on said indebtedness and providing a sinking fund for the payment of said indebtedness.

"158. The respective cities, towns, counties, taxing districts and municipalities shall not be authorized or permitted to incur indebtedness to an amount, including existing indebtedness, in the aggregate exceeding the following named maximum percentages on the value of the taxable property therein, to be estimated by the assessment next before the last assessment previous to the incurring of the indebtedness, viz.: Cities of the first and second classes, and of the third class having a population exceeding fifteen thousand, ten per centum; cities of the third class having a population of less than fifteen thousand, and cities and towns of the fourth class, five per centum; cities and towns of the fifth and sixth classes, three per centum; and counties, taxing districts and other municipalities, two per centum: Provided, any city, town, county, taxing district or other municipality may contract an indebtedness in excess of such limitations when the same has been authorized under laws in force prior to the adoption of this constitution, or when necessary for the completion of and payment for a public improvement undertaken and not completed and paid for at the time of the adoption of this constitution: And provided further, if, at the time of the adoption of this constitution, the aggregate indebtedness, bonded or floating, of any city, town, county, taxing district or other municipality, including that which it has been or may be authorized to contract as herein provided shall exceed the limit herein prescribed, then no such city or town shall be authorized or permitted to increase its indebtedness in an amount exceeding two per centum, and no such county, taxing district or other municipality, in an amount exceeding one per centum, in the aggregate upon the value of the taxable property therein, to be ascertained as herein provided, until the aggregate of its indebtedness shall have been reduced below the limit herein fixed, and thereafter it shall not exceed the limit, unless in case of emergency,

the public health or safety should so require. Nothing herein shall prevent the issue of renewal bonds, or bonds to fund the floating indebtedness of any city, town, county, taxing district or other municipality.''

Sections 157 and 158, *supra,* were parts of the present constitution of Kentucky, adopted in 1891; while section 157a is an amendment to the constitution, and was adopted by the people in 1909.

Previous to this amendment, the maximum indebtedness which any county could incur for all purposes was limited by section 158 of the constitution, to an aggregate sum not exceeding two per cent. of the assessed value of the property in the county; and, by section 157, *supra,* it was further provided that the tax rate of a county, to be levied for all purposes other than school purposes, should not, at any time, except to pay pre-existing debts, exceed fifty cents on each one hundred dollars of the assessed value of the property in the county; and no county had authority to become indebted, in any manner or for any purpose, in excess of the income and revenue for the year, ''without the assent of two-thirds of the voters thereof, voting at an election to be held for that purpose;'' and, any indebtedness contracted in violation of section 157, should be void.

So, to state it briefly, the tax rate of a county, except for school purposes, was limited to fifty cents on each $100.00 of taxable property; and the indebtedness of a county for any year was limited to its income for that year, unless two-thirds of the participating voters thereof should consent to exceed the prescribed limit. And, the extent of the possible indebtedness of a county was further restricted to two per centum of its taxable property.

It was found from experience, however, that these constitutional restrictions prevented many counties in the state from constructing and maintaining adequate roads, because of the difficulty encountered in obtaining the assent of two-thirds of the electors voting upon that proposition.

Furthermore, it may fairly be inferred from the adoption of section 157a, that the public had, from nearly twenty years' experience, reached the conclusion that the construction of public roads in the State was manifestly of so great and urgent importance as to place an indebtedness created for that purpose upon a footing

different from ordinary debts, created and restricted under sections 157 and 158 of the constitution.

Appellant contends, however, that section 157a should be considered merely as an amendment to section 157, and read in connection with it; and, that when so read, the limitation of section 157 requiring a two-thirds vote should be applied to section 157a, because section 157a makes no express attempt to change that feature of section 157.

Evidently, however, in adopting section 157a, the people intended to make more than minor changes concerning the creation of debts for road purposes. Section 157a is radical in its nature. By contrasting section 157 with section 157a, it will be noticed, (1) that the latter section contains the new provision that the credit of the Commonwealth may be given, pledged or loaned to the counties of the Commonwealth for public road purposes; (2) that the amount of indebtedness which any county was permitted to incur was raised from two per centum upon the taxable property of the county as provided by section 158, to five per centum of the value of the taxable property of the county; (3) that instead of requiring an indebtedness of that amount to be authorized by a vote of two-thirds of the electors of the county voting on the question at a general election, section 157a provides that such additional indebtedness may be incurred when it was submitted to the *"voters of the county"* for their ratification or rejection; (4) at a special election held for that purpose, in such manner as may be provided by law; and (5) that when the assent of the voters of the county was so obtained, the county might levy, "in addition to the tax rate allowed under section 157 of the constitution," an amount not exceeding twenty cents on the hundred dollars of the assessed valuation of the property of the county. These constitute radical changes widely departing from the scheme provided by sections 157 and 158 of the constitution.

The rule for construing constitutional amendments is stated in 8 Cyc., 749, as follows:

"Amendments to constitutions or statutes are not regarded as if they had been parts of the original instruments, but are considered rather in the nature of codicils or second instruments, altering or rescinding the originals to the extent to which they are in conflict, and of course are to be treated as having a force superior to the

originals to the extent of such conflict. If a constitutional amendment does not in terms expressly repeal a constitutional provision, yet if it covers the same subject provided for in such provision, the amendment will be regarded as a substitute for it and as suspending it; and the same rule applies to statutes.''

Applying this rule of construction to the case before us, we must give to section 157a, a superior force wherever it conflicts with section 157 of the constitution. This result necessarily follows, since the purpose in adopting the amendment was to change the original instrument, and the changes intended are shown by the conflicting provisions between the old and the new constitutional provisions.

This idea was aptly expressed by this court in the following extract from the opinion in Mitchell v. Knox County Fiscal Court, 165 Ky. 550:

''It is further insisted, however, that the levy and donation of this tax to the counties for public road purposes violates that portion of section 177 of the constitution which forbids the Commonwealth from constructing a railroad or other highway. This objection overlooks the amendment to the constitution (section 157a), which expressly permits the Commonwealth to give its credit and resources to its counties in aid of their public roads, even though it should be conceded for the sake of the argument, that the acts of the state, in this respect, amount to the construction of a highway. Section 157a being an amendment to the constitution, necessarily annuls any and all former provisions of that instrument which conflict with it; and since it permits the state to give its aid to the building of county roads, it cannot be said to violate section 177, which was intended to be changed in this respect.''

And, in the later case of Bowman v. Fayette County, 168 Ky. 529, we further said:

''The manner provided by the legislative authority to carry into effect the provisions of section 157a, *supra*, is section 4307, Kentucky Statutes, Carroll, 1915, and the requirements of this section seem to have been literally followed by the people and officials of Fayette county in obtaining the authority to incur the proposed indebtedness, and to issue and sell the bonds sought to be enjoined. Section 4307, *supra,* provides for the holding of an election 'on some day named in said petition, not

earlier than sixty days after said application is lodged with the judge of said court.' It further provides that at said election every legal voter of the county shall be authorized to vote. It will be observed that neither the constitutional provision nor the statute, adopted to carry into effect its provisions, requires more than a majority of those voting at the election to give their assent, in order to authorize the indebtedness to be incurred.''

Constitutional amendments being in the nature of codicils to wills, or second instruments, their sole purpose is to change the instrument they attempt to amend; otherwise, there would be no reason for the amendment.

We must, therefore, look to the language of section 157a for its meaning on every subject of which it treats. The text of section 157 being explicit in requiring the assent of two-thirds of the voters in creating an indebtedness for any purpose, how can it be said that the text of section 157a is any less explicit when it provides that an indebtedness for public road purposes may be created upon its submission to and approval by ''the voters of the county?'' So, the question recurs: May the assent of the voters of the county be expressed by a majority of such voters, or is a greater proportion required?

It is an elementary proposition in American law, that in the absence of some statutory requirement to the contrary, the result of an election is determined by a majority of the electors. In most states, where there are more than two candidates, a plurality of votes is sufficient to elect, in the absence of some constitutional requirement upon the subject.

When, therefore, section 157a made at least four other radical changes, when compared with section 157, we see no reason to assume that the language providing for the assent of the voters was not also intentionally changed in its application to the subject of public roads. To hold otherwise, we would have to assume that it was not intended to give to the words there used their ordinary and legal significance.

We are clearly of the opinion, therefore, that under section 157a of the constitution, an indebtedness for public road purposes may be authorized by a majority of the voters of the county who participate in an election upon that question.

Judgment affirmed, the whole court sitting: Judge Turner dissenting.