## Bloxton v. State Highway Commission, et al.

(Decided June 27, 1928.)

## Appeal from Franklin Circuit Court.

1.  Constitutional Law.—Acts 1928 session, entitled "The State High-way Toll Bridge Act," held not to violate Constitution, sec. 19, pro-viding that no law shall be enacted impairing the obligations of contracts, in that the act authorizes the condemnation of bridges that are now operated under franchises, since under the act prop-erty may only be condemned for public purposes upon paying fair compensation therefor, and a franchise is similar to other prop-erty within section 242, authorizing taking of property for public purposes when just compensation is paid.

2.  Statutes.—Act entitled "The State Highway Toll Bridge Act," passed at 1928 legislative session, providing that highway com-mission may condemn any bridge or property or privileges neces-sary, and that compensation therefor shall be paid as provided in Ky. Stats., secs. 835-840, for condemnation of land by railroad, held not to violate Constitution, sec. 51, providing that no act shall be amended or provisions thereof extended or conferred by ref-erence to its title only.

3.  Eminent Domain.—State Highway Toll Bridge Act, passed at 1928 Session of Legislature, authorizing highway commission to con-demn property necessary and requiring compensation to be paid therefor, to be ascertained as provided in Ky. Stats., secs. 835-840, held not invalid because such statutes provide a method for arriving at value of only the physical property, since purpose of act is only to provide a method of procedure.

4.  Eminent Domain.—When property is condemned, its value can be fixed in view of the uses to which the property is applied or may reasonably be applied.

5.  Eminent Domain.—State Highway Toll Bridge Act, passed at 1928 legislative session and providing for condemnation of property necessary, must be construed in light of Constitution, sec. 242, providing private property cannot be taken without just compen-sation.

6.  Constitutional Law.—State Highway Toll Bridge Act, passed at 1928 legislative session, held not violative of Constitution, secs. 27, 28, in that it attempts to delegate legislative powers to the state highway commission by authorizing the commission to fix the rate of toll for each bridge, terms and maturity of bonds, and terms upon which bids may be made; such matters being admin-istrative and not legislative.

7.  Constitutional Law.—While legislative powers may not be con-ferred upon any executive board, administrative powers may be conferred upon a board without violation of Constitution, secs. 27, 28, prohibiting separation of the legislative, executive, and judicial departments.

8.  States.—State Highway Toll Bridge Act, passed at 1928 legislative session, held not violative of Constitution, secs. 49, 50, prohibiting General Assembly from contracting debts in excess of $500,000 except on vote of people, in view that act did not authorize a debt to be contracted by commonwealth or create any indebtedness against it, since only the bridges acquired under the act are affected by it.

9.  Taxation.—State Highway Toll Bridge Act, passed at 1928 legislative session, held not violative of Constitution, sec. 171, providing that taxes shall be levied by general law and be uniform within territorial limits of authority levying the tax; tolls not being taxes within meaning of such provision, but being compensation paid for the use of a bridge.

10  Bridges.—State Highway Toll Bridge Act, passed at 1928 legislative session, held not invalid because giving highway commission right to select bridges for condemnation or to combine two bridges in one bond issue.

11. Eminent Domain.—State Highway Toll Bridge Act, passed at 1928 legislative session, held not defective in failing to make any provision for the condemnation of franchises, since the taking of a bridge under the act is a taking of the franchise to collect tolls on the bridge and must be compensated for in the condemnation proceedings.

12. Statutes.—State Highway Toll Bridge Act, passed at 1928 legislative session, held not violative of Constitution, sec. 59, subsecs. 15, 16, or 17, as special legislation, or any other section of the Constitution.

13. Taxation.—State Highway Toll Bridge Act, passed at 1928 legislative session, held not unconstitutional because of exemption of the bonds issued under the act from taxation, in view of Constitution, sec. 171, that bonds of state, counties, municipalities, taxing and school districts shall not be subject to taxation.

14. States.—State Highway Toll Bridge Act, passed at 1928 legislative session, held not violative of Constitution, sec, 177, prohibiting the pledging or giving away of the state credit to any company, corporation, or political subdivision of the state.

CHAS. H. MORRIS for appellant.

J. W. CAMMACK, Attorney General, and CLIFFORD E. SMITH, Assistant Attorney General, for appellees.

BURNAM & GREENLEAF and FIELDS, BYERS & MOORE, amici curiae.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Affirming.

At its 1928 session, the General Assembly enacted, and the Governor approved, a bill known as the "State

Highway Toll Bridge Act," empowering the state highway commission as the agency of the state to build or cause to be built, or to purchase or acquire by condemnation or otherwise, and own and operate, bridges and necessary appurtenances thereto across any stream in Kentucky or stream that is the boundary line between Kentucky and any other state, and to issue bonds in payment therefor, the bonds not to be an obligation of the commonwealth; the commission shall fix toll charges sufficient to maintain the bridge and appurtenances and pay the interest on the bonds and retire the bonds at maturity. The tolls collected shall be paid into the state treasury to be kept in a separate fund known as the "Highway Bridge Fund," and can only be used for paying the cost of operating and maintaining the particular bridge or bridges and for paying the interest on the bonds issued as a charge against the particular bridge or bridges. The commission is authorized to provide in the bonds for a first lien on such tolls as may be collected for the use of any such bridge or bridges, also a lien on the structure of the bridge and approaches thereto. But it is provided that the bonds shall not be an obligation of the state or payable out of any fund, except that derived as above stated. The act also authorizes the commission to couple not more than two bridges under one contract and under one bond issue, the tolls and revenues derived from such two bridges to be used for the payment of the cost of operation and maintenance and for the payment of the interest and retirement of the bonds. Only the good faith of the commonwealth is pledged to give its moral support to the collection of the tolls and payment of the principal and interest on the bonds, which by the terms of the act shall be free from taxation. The commission is empowered to fix the rate of tolls and charge and collect them for such length of time as in the opinion of the commission will be sufficient to pay off the bonds issued for the erection or purchase of the bridge. It is authorized to retire the bonds at any time after one year from the date of their issue; the rate of tolls to be charged and collected, if fixed in any bond or bonds, shall not be reduced without the consent of the bondholders. After the bridge or bridges, acquired under the provisions of the act, have been fully paid for, the bridge or bridges shall be free of toll charges unless tolls may be deemed necessary to pay the cost or some extraordinary casualty or calamity, and only such as may be necessary

for this purpose may be collected. All the cost of acquiring right of way, preparing plans and specifications, advertising, purchasing, or constructing the bridges shall be paid from the bonds to be issued under the act. The cost of operation and maintenance shall be paid from the tolls charged and collected. In the event the tolls should in any case be insufficient, then the bonds are a lien on the bridge or bridges.

The appellant C. R. Bloxton, a citizen and taxpayer of Frankfort, Ky., filed a suit in the Franklin circuit court to test the constitutionality of the act, attacking it on a number of grounds. The People's State Bank filed in the action its intervening petition, stating that it expected to be bidder for the bonds authorized by the act, provided the act is constitutional. It prayed the court to determine under the Declaratory Judgment Act (Laws 1922, c. 83) the constitutionality of each provision of the act. The defendant demurred to the plaintiff's petition. The circuit court sustained the demurrer and adjudged the act valid. The plaintiff appeals, and on the appeal attorneys for other taxpayers and toll bridge companies have filed a brief as amicus curiae, insisting that the act is unconstitutional in certain respects. The objections will be taken up in the order in which they are stated in the briefs.

1. It is insisted that the act authorizing the condemnation of bridges that are now operated under franchises heretofore obtained is in violation of section 19 of the Constitution, providing that no law shall be enacted impairing the obligation of a contract. But under the act the property may only be condemned for public purposes upon paying fair compensation therefor. Any property owned by the citizen may be taken for public purposes under the Constitution when just compensation therefor is paid the owner. Section 242. A franchise stands exactly as any other property; it is personal property, and like any other personal property may be taken for the public use upon just compensation.

> "A franchise must be surrendered up for a public use, like any other property, upon just compensation being made. The rule extends to street railroads, turnpikes and plank roads, toll bridges, railroad rights of way, ferries, mill privileges, and water rights." 20 C. J. 594, sec. 84.

The reasons for the rule are thus stated, in Richmond, etc., R. Co. v. Louisa, etc., R. Co., 13 How. 71, 14 L. Ed. 55:

. "The grant of a franchise is of no higher order, and confers no more sacred title, than a grant of land to an individual; and, when the pulic necessities require it, the one, as well as the other, may be taken for public purposes on making suitable compensation; nor does such an exercise of the right of eminent domain interfere with the inviolability of contracts."

Some years ago a large part of the turnpikes of the state were operated under franchises authorizing the collection of tolls. The Legislature passed an act authorizing the condemnation of these turnpikes. The acts were sustained by this court. There can be no distinction between the condemnation of a franchise-operated turnpike and the condemnation of a franchise-operated bridge connecting two portions of a public highway. The public use is the same in one case as in the other.

2. It is provided by the act that the commission may condemn any bridge, real estate, or personal property, rights or privileges deemed necessary, and the compensation to be paid therefor shall be ascertained and paid in the same manner as provided in Ky. Stats., secs. 835 to 840, exclusively, for the condemnation of land by railroad companies. Section 51 of the Constitution provides that no act shall be amended or the provisions thereof extended or conferred by reference to its title only, and it is insisted that this provision of the Constitution is violated. But statutes known as ' 'Reference Statutes," which refer to and by reference adopt pre-existing statutes, are not strictly amendatory and are not obnoxious to the constitutional provision. 25 R. C. L. sec. 60, p. 907. The authorities on this subject are clear, and in fact there are in our statutes many such provisions. Were it otherwise, it would be necessary to reprint in each chapter of Kentucky Statutes provisions properly placed in other provisions of the collection. A similar provision is made in the act of March 4, 1908, for the condemnation of land for water power, section 1599b, subsection 2, Ky. Stats.; and in the Act of March, 1920, for the condemnation of land for road purposes, section 4356t, subsec. 12. There are many other like provisions in the existing laws, which have been sustained.

It is also insisted that the act is invalid because sections 835-840, Ky. Stats., provide a method for arriving at the value of only the physical property. But the purpose of the act is only to provide a method of procedure. The rules of evidence and the rules for determining the just compensation to be paid are to be determined by the court under the settled rules of law, and these are applicable to all property whether physical or intangible. The rule is that when property is condemned its value must be fixed in view of the uses to which the property is applied or may reasonably be applied. The bridge is applied to the purpose of collecting tolls from people passing over it. Its value depends upon the franchise to collect tolls. All the facts proper to be shown to establish the value of the property may be shown in this proceeding just as they may be shown in other like proceedings. Under section 242 of the Constitution, private property cannot be taken without just compensation. The act is to be read in the light of the constitutional provision. The taking of the bridge is necessarily a taking of the right to collect tolls; for the owners cannot collect tolls without the bridge, and they must receive fair compensation for the property taken. Richmond, etc., Turnpike Co. v. Madison Fiscal Court, 114 Ky. 357, 70 S. W. 1044; Clarion, etc., Bridge Co. v. Clarion Co., 172 Pa. 243, 33 A. 580.

3. It is insisted that the act violates sections 27 and 28 of the Constitution, in that it attempts to delegate legislative powers to the state highway commission. These sections of the Constitution divide the powers of the government of the state into three distinct departments, the legislative, the executive, and the judicial, and provide that no person or persons of one of these departments shall exercise any power properly belonging to either of the others. It is insisted that the provisions of the act authorizing the commission to fix the rate of toll for each bridge, the terms and maturity of the bonds, and the terms upon which bids may be made, confer upon the board legislative powers. While legislative powers may not be conferred upon any executive board, administrative powers may be conferred upon a board. The rate of toll to be charged, the rate of interest to be paid on the bonds, and the time the bonds shall run before maturity, are all matters to be determined under the facts and circumstances according to a reasonable judgment. Such matters are administrative; they are not legislative.

Such business details are, by many acts, committed to the boards having charge of the business, and it is well settled that such details of administrative matters may properly be left by the Legislature to the sound judgment of the board. Tolls are not taxes within the meaning of section 181 of the Constitution. For tolls are collected from every one who uses the bridge, whether a resident of this state or a non-resident, while taxes may only be levied upon residents of this state, or property having its situs in this state. Tolls are, strictly speaking, compensation paid for the use of the bridge and are similar to the tolls paid to a ferryman where a ferry is used. See Klein v. Louisville, 224 Ky. 624, 6 S. W. (2d) 1104.

4. It is insisted that under the provisions of the act the state highway commission may create an indebtedness of the commonwealth within the meaning of sections 49, 50, of the Constitution, which prohibit the General Assembly from contracting debts at any time in excess of $500,000 and provides that no act of the General Assembly shall authorize any debt to be contracted on behalf of the commonwealth in excess of $500,000, except upon a vote of the people. The act does not authorize a debt to be contracted on behalf of the commonwealth or create any indebtedness of the commonwealth. The bondholders must look to the tolls and the bridge property for the payment of the bonds. No property which the state now owns is put in lien for the bonds. Only the bridges acquired under the act are affected by it. This question was fully considered in Klein v. Louisville, decided May 22, 1928.

5. The act does not violate section 171 of the Constitution, providing that taxes shall be levied by general law and shall be uniform within the territorial limits of authority levying the tax; for, as shown above, tolls are not taxes within the meaning of this provision. The tolls on one bridge which is a mile long may be very much higher than the tolls on a bridge 50 yards long; tolls in one locality might be unreasonable which in another would be reasonable.

6. The act is not invalid in that it gives the commission the right to select bridges for condemnation or to combine two bridges in one bond issue. What would be reasonable or necessary for the public use is a matter to be decided in each case upon all the circumstances. Each case must be decided upon its own facts. The Legisla-

ture has not time to pass on such matters, and if the public business is to be properly conducted for the best interests of the public, such matters must be left to the sound judgment of the board, which may decide each case on its merits, in view of the public interest and all the circumstances. The state has created a state highway commission. It is levying a tax of about $12,000,000 a year to secure a system of free state highways, and bridges are an essential part of these highways. The act confers upon the commission only like power as to bridges as the commission already exercises as to the other parts of the highway connected by these bridges. The power to unite two bridges in one bond issue is reasonable, for it is to the interest of the public that the bonds should be sold for a fair price and this will facilitate the sale of the bonds. But it does not create any obligation upon the state. When two bridges should be included in one bond issue is left to the judgment of the commission, to be exercised in the public interest so that free highways may be obtained as soon as practicable.

7. The act is not defective in failing to make any provision for the condemnation of franchises. The franchise to collect tolls cannot be exercised after the bridge is taken, as shown above, and the taking of the bridge under the act is a taking of the franchise to collect tolls on the bridge and must be compensated for in the condemnation proceedings.

8. The act is not special legislation in violation of subsections 15, 16, or 17 of section 59 of the Constitution, or any other section of the Constitution. It is a general act and is simply a supplement to the previous acts looking to the construction of adequate free state highways in the state.

9. The exemption of the bonds from taxation is not in violation of any provision of the Constitution. By section 171 of the Constitution, bonds of the state and counties, municipalities, taxing and school districts, shall not be subject to taxation. Under this provision it was held, in Klein v. Louisville, above cited, that like bonds may be exempted from taxation. The purpose of section 171 of the Constitution was to exempt public bonds of this character from taxation; for such a provision makes a bond more salable and enables the public to sell the bond at a better price, thus saving money to the taxpayers.

10. The act does not violate section 177 of the Constitution, which provides that the credit of the common-

wealth shall not be given or pledged to any company, corporation, or political subdivision of the state, nor shall the commonwealth construct the railroad or other highway, for this provision of the Constitution was modified by the amendment of 1909, which is now section 157a, under which the state highway commission has been created and taxes have been levied to create a system of state highways, and the construction of bridges is a necessary part of this work. Mitchell v. Fiscal Court, 165 Ky. 543, 177 S. W. 279; Gatton v. Fiscal Court, 169 Ky. 425, 184 S. W. 1.

Judgment affirmed.

### Concurring Opinion by Judge Dietzman.

This suit under the Declaratory Judgment Act was brought by a taxpayer with an intervening petition filed by a bank who proposes to bid for bonds which may be issued pursuant to the provisions of this act if it be held constitutional. I take it that it is elementary that a suitor may not attack the constitutionality of an act except in so far as he is affected thereby. The broad terms of the Declaratory Judgment Act, Civ. Code, sec. 639a-1 et seq., were never meant to afford the opportunity of "taking the opinion of the justices" as is the practice in some states, such as Maine and Massachusetts, and we have heretofore steadily declined to make a declaration of rights under that act if the rights of those not parties to the suit are involved. See Coke v. Shanks, 209 Ky. 723, 273 S. W. 552; Herbert C. Heller & Co. v. Hunt Forbes Construction Co., 222 Ky. 564, 1 S. W. (2d) 970. Experience has dictated the wisdom of these rules. The act under consideration specifically provides that if any part of it be unconstitutional, that shall not affect the rest of the act. To me, it is patent that the rights of neither the petitioner nor of the intervening petitioner are affected in any manner by those parts of the act authorizing the condemnation of existing bridges. Whether the act impairs the obligation of contract as discussed in point 1 of the opinion, or not, may be vitally important to some bridge company whose bridge may be sought to be condemned, and whether the procedure provided for that purpose is constitutionally provided as discussed in points 2 and 7 of the opinion may also be vitally important to such bridge company; but such matters do not affect either this taxpayer or the bank. The record does not show that any toll bridge now owned by a bridge

company has been condemned, or that it is the purpose of the highway commission to condemn any such bridge. Indeed, it may never do so. But whether it does or not, the obligations or rights of the plaintiffs, original and intervening, to this suit are neither increased nor decreased by these provisions governing the condemnation of such bridges. Even if they be unconstitutional, they cannot affect the rest of the act, and we ought not to be making a declaration of rights here which so vitally affects the rights of those not parties to the suit, especially when there are no rights to declare. The fact that one bridge company has filed a brief amicus curiae does not change the situation. That does not make the bridge company a party to this suit, nor will it be bound by this decision. In 2 C. J. 1325, in speaking of the powers of an amicus curiae, it is said:

"As an amicus curiae can only suggest matters to the court, he will be deemed not to be aggrieved if the court declines to adopt his suggestion, whether brought to the attention of the court by motion or in any other manner; hence he cannot make a valid exception to the ruling of the court, as his friendly offices, conceding them to be disinterested, are at an end when he has informed the court.

"An amicus curiae, having no control over a suit, has no right to institute any proceeding therein, and he cannot take the case from one court to another by appeal or writ of error; nor may he maintain a bill of review or a bill in the nature of a bill of review."

From this, it is obvious that the bridge company here will not be bound by the decision herein rendered on the points I have mentioned.

As to the other points discussed in the opinion, I concur with the majority opinion. They do bear on the rights of at least the original plaintiff to this suit. As to points 1, 2, and 7, I do not think a declaration ought to be made at this time.

I am authorized to state that Judge McCandless concurs in these views and this opinion.